# United States Court of Appeals for the Federal Circuit

2007-5172

CHE CONSULTING, INC.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Steven E. Kellogg, The Kellogg Law Firm, of Belleville, Illinois, argued for plaintiff-appellant.

Christopher L. Krafchek, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. On the brief were Jeffrey S. Bucholtz, Acting Assistant Attorney General, Jeanne E. Davidson, Director, Brian M. Simkin, Assistant Director, and F. Jefferson Hughes, Trial Attorney.

Appealed from: United States Court of Federal Claims

Judge Thomas C. Wheeler

# United States Court of Appeals for the Federal Circuit

2007-5172

CHE CONSULTING, INC.

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Appeal from the United States Court of Federal Claims in Case No. 07-CV-055, Judge Thomas C. Wheeler.

_____

DECIDED:  December 30, 2008

_____

Before LOURIE, RADER, and BRYSON, Circuit Judges.

RADER, Circuit Judge.

In this bid protest case, the United States Court of Federal Claims entered judgment in favor of the United States Naval Oceanographic Office ("NAVO") and against the challenger, CHE Consulting ("CHE").  CHE protested NAVO's decision to solicit a single provider for the hardware and software maintenance of a complex computer system.  During oral argument, the trial court requested NAVO to supplement the administrative record with regard to, inter alia, system maintenance practices of other agencies.  Following supplementation, the trial court entered judgment in favor of NAVO.  CHE Consulting, Inc. v. United States, 78 Fed. Cl. 380 (2007).  On appeal, CHE contends both that the trial court violated the Administrative Procedure Act ("APA") by relying on NAVO's post hoc rationalizations and that the trial court allowed NAVO's

single-provider maintenance contract to violate the Competition in Contracting Act ("CICA"), 10 U.S.C. § 2304(a)(1)(A) (2006). Because NAVO had articulated a rational basis for its contracting decision before supplementing the record, this court affirms.

I.

NAVO operates the Defense Department's Major Shared Resource Center ("MSRC"), a supercomputing center that acquires and analyzes worldwide oceanic and shoreline data. The NAVO MSRC supports many weapons programs, and also provides information to 4,550 civilian scientists, engineers, computer specialists, and security experts.

The hardware for the procurement at issue in this appeal is a robotic tape library at the MSRC. The library stores as many as 6,000 digital data tapes. When an offsite user needs to retrieve data from a particular data tape, a robotic arm within the complex retrieves the tape, mounts it into a drive, reads the data, dismounts the tape from the drive, and returns it to its slot within the library complex.

Both the hardware and the software of these systems require maintenance. Storage Technology Corporation ("STK") and its licensees alone supply the software support for this system because that software is its own proprietary intellectual property. Other vendors, however, may supply hardware maintenance. According to the bid documents, a maintenance vendor must show its ability to supply services 24 hours a day, 7 days a week, with a 2-hour response time. MSRC systems also require a 97 percent availability rate for all users.

On August 21, 2006, the General Services Administration ("GSA") issued a solicitation seeking a single vendor to provide maintenance of both the hardware and

software for NAVO's robotic tape library systems. On August 23, 2006, CHE, a computer maintenance contractor, requested NAVO to separate its maintenance procurements into separate hardware and software contracts to allow full and open competition. After consulting its technical staff, GSA revised the solicitation to facilitate that separation.

CHE submitted a hardware maintenance proposal under that revised solicitation. GSA forwarded that proposal to NAVO's representative. In an email memorandum, NAVO's representative advised that it would not accept de-bundled proposals; NAVO instead would only consider proposals from single providers. NAVO's representative explained that multiple providers could not meet the MSRC's operational needs because separate hardware and software maintenance providers could disrupt mission-critical service and maintenance response time. Following this direction from NAVO's representative, the GSA's contracting officer cancelled the de-bundled solicitation and issued a new solicitation which demanded a single service provider capable of performing both software and hardware maintenance.

II.

On December 7, 2006, CHE filed an agency-level protest to contest the new solicitation. CHE cited seven examples of other federal agencies with separate hardware and software maintenance requirements. CHE also cited its strong track record with regard to some 75 hardware maintenance contracts for similar STK robotic tape library systems around the world. In response, NAVO submitted an affidavit justifying its decision to bundle software and hardware services because of the complexity and importance of this library system, the risk of potential disputes between

multiple maintenance providers in the event of a failure, and the great cost of system downtime. In a final decision, the GSA official sided with NAVO, determining that NAVO had met its burden to provide a reasonable basis for its need to bundle services.

CHE then filed suit in the Court of Federal Claims on January 24, 2007, seeking to enjoin NAVO from bundling both services. CHE argued that the agency's action violated the full and open competition requirements of CICA by restricting competition for hardware maintenance. CHE further argued that NAVO's arguments that de-bundling the contract would result in finger-pointing and unnecessary downtime were conclusory in nature without any support in the record. Both parties moved for judgment on the administrative record.

At the hearing on the parties' motions, the trial judge expressed dismay at the sparseness of the evidentiary record. He criticized NAVO's "string of conclusory type statements . . . in a relatively brief affidavit" and opined that "the Agency ha[d] not done its homework" in supporting its procurement decision. Hr'g Tr. 49:13-18, Mar. 29, 2007. The trial judge then suggested that NAVO supplement the record by conducting a cost analysis and market survey of other federal agencies. The trial judge wished to receive information about other agencies with the same availability requirements as NAVO and about other agencies with experience involving finger-pointing disputes over maintenance obligations. The trial judge also sought information about the effect on competition and performance in those other agencies and about any cost impacts from separated solicitations.

On May 21, 2007, the GSA reported results from its cost and market analyses. Based on the supplemented record, the trial court affirmed the GSA's action, finding that

the market and cost analysis were consistent with NAVO's original concerns about the risk and cost of downtime versus cost savings from using two providers. This appeal followed. This court has jurisdiction under 28 U.S.C. § 1295(a)(3).

III.

In judgments upon the administrative record, this court reviews the trial court's legal determinations without deference. Bannum, Inc. v. United States, 404 F.3d 1346, 1351 (Fed. Cir. 2005). "Bid protest actions are subject to the standard of review established under section 706 of title 5 of the Administrative Procedure Act . . . by which an agency's decision is to be set aside if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . ." R & W Flammann GmbH v. United States, 339 F.3d 1320, 1322 (Fed. Cir. 2003) (internal citations and quotations omitted). In applying the APA to bid protests, this court has held that "a bid award may be set aside if either: (1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." PGBA, LLC v. United States, 389 F.3d 1219, 1225 (Fed. Cir. 2004).

"Procurement officials have substantial discretion to determine which proposal represents the best value for the government." E.W. Bliss Co. v. United States, 77 F.3d 445, 449 (Fed. Cir. 1996). CHE's challenge to NAVO's procurement decision thus invokes "highly deferential" rational basis review. Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054, 1058 (Fed. Cir. 2000) ("This standard requires a reviewing court to sustain an agency action evincing rational reasoning and consideration of relevant factors.").

Upon review of the entire record, this court determines that NAVO had established a rational basis to combine hardware and software maintenance services into one contract before the trial court requested supplementation. The additions to the administrative record were thus not necessary.

NAVO's contracting officer representative ("COR") laid a framework for the agency's rational basis in his September 28, 2006 memorandum that expressed concern that segregating the maintenance contracts would present unacceptable risks to mission-critical equipment. Gruzinskas Mem., Sep. 28, 2006. The memorandum states that a segregated maintenance contract would be an "unacceptable solution" at odds with the "tightly integrated collection of hardware, software, and firmware which operates as a complete system [at the NAVO MSRC]." Id. Further, the record shows that those systems are "very critical" to NAVO's operations. Id. "Any disruption in service can ripple through the center with adverse effects [throughout the agency]." Id. Moreover, a multi-vendor approach would make it "extremely difficult if not impossible" to maintain the equipment at the required "24 hour, x 7 day period with a two hour response time." Id. As the memo posits, a risk to the NAVO mission could arise because of "conflicts arising from failures and responsibility for these failures in a very complex system." Id.

The COR's December 18, 2006 affidavit, also part of the unsupplemented record, further builds on the agency's rational basis foundation. Gruzinskas Aff., Dec. 18, 2006. The affidavit provides, in great detail, particulars about the MSRC's mission critical operations, which relate to a broad swath of national security interests. Id. at 2-4. Although a segregated maintenance solution would be "theoretically possible, and could

potentially result in a cost savings to the government," according to the affidavit, such a solution "would incur a risk to our computing environment that the government is not willing to accept." Id. at 1. The ultimate cost of any potential down time would be "difficult to quantify . . . in financial terms." Id. Nonetheless, that downtime could possibly affect "critical environmental modeling support" necessary for "every ship, aircraft, and submarine in service for the US Navy." Id. Getting straight at the heart of the matter, the agency's legal memorandum, dated the same day as the COR's affidavit, states:

> For each wall clock hour of downtime incurred, many thousands of processor hours of downtime are experienced by the MSRC users. The inability to provide these services on a continual uninterrupted basis will have a direct negative impact on DoD missions and national defense operations. . . .
>
> The MSRC requires the benefit of dealing with only one contractor accountable for all repairs and maintenance which will relieve the government of the need to analyze the source of equipment problems and identify the responsible contractor to service the equipment.

Sinn Mem. 6, Dec. 18, 2006.

Contrary to CHE's arguments, NAVO has no obligation to point to past experiences substantiating its concerns in order to survive rational basis review. Moreover CICA imposes no obligation to supply a historical record of failures in order to substantiate a risk. Indeed NAVO has a responsibility to assess risks and avoid them before they become a historical fact. In terms of CICA, its policies of "full and open competition" also recognize that agencies have discretion to use competitive procedures that are "best suited under the circumstances of the procurement." 10 U.S.C. § 2304(a)(1). In terms of this procurement, NAVO need not suffer some maintenance failures in order to substantiate its assessment of risks or other potential

"circumstances of the procurement." Thus, to satisfy its obligation to supply a rational basis for its decisions, NAVO may supply a reasoned chronicle of its risk assessment, as it did in this case.

The GAO's decision in In re National Customer Engineering, No. B-251135, 1993 WL 86835 (Comp. Gen. Mar. 11, 1993) ("National") informs this decision. In National, GAO considered a protest against combining software and hardware maintenance contracts for computer equipment. In that case, the Department of the Interior had also sought a bundled procurement to avoid the administrative problem of finger-pointing between different contractors. Id. at *6. In sustaining the protest, GAO found the government's concerns regarding administrative convenience to be outweighed by the agency's duty under CICA to maximize competition because "[t]here is no evidence either that such delays occur routinely or that they would cause undue hardship or expense." Id. at *5. The agency's administrative explanation in National was merely an "unsubstantiated concern about an ill-defined problem of potentially very limited proportions." Id. In reaching that decision, however, GAO foresaw situations similar to this case:

> We recognize that in certain circumstances our Office has upheld the legitimacy of bundling where the agency cited the need to obtain the benefit of dealing with only one contractor accountable for all repairs and maintenance, thus relieving the government of the need to analyze the source of equipment problems and to identify the correct contractor to service the equipment. In those cases, however, the agency rationale was based on the paramount need for the availability of the system in emergency situations. Where time is critical, the agency's requirement may render unacceptable any lapse in service, however brief, caused by the need to coordinate between contractors.

Id. at *4 (emphasis added) (citations omitted).  In sum, the record in this case differs from the record in National in a few critical ways, namely the criticality of the mission and the risk of downtime during emergency situations.

NAVO similarly demonstrated in the pre-supplemented administrative record the paramount need for system availability at all times in light of the mission of the critical MSRC equipment.  NAVO showed that undivided maintenance service is rationally related to critical mission needs, especially where the software and hardware aspects of the system are highly complex and tightly integrated.  This court detects nothing irrational in a contracting officer's decision to maintain one point of contact, rather than two, for the maintenance of a complex system whose downtime would jeopardize national security interests.  NAVO articulated a sound reason for its procurement decision, and this court sees no reason to disturb it.  See Honeywell, Inc. v. United States, 870 F.2d 644, 648 (Fed. Cir. 1989) ("If the court finds a reasonable basis for the agency's [procurement decision], the court should stay its hand even though it might, as an original proposition, have reached a different conclusion . . . . ") (quotation marks and citations omitted).

IV.

Without supplementation, the record in this case provides a rational basis for NAVO's decision to maintain a bundled maintenance approach.  This court thus declines to opine about the legal consequences of NAVO's supplementation of the administrative record in light of APA requirements.  This court found no reason to consult the supplemented portion of the record to sustain the agency's procurement decision.  Accordingly, this court affirms the judgment of the Court of Federal Claims.

AFFIRMED


NO COSTS