# United States Court of Appeals for the Federal Circuit

2009-5076


SAVANTAGE FINANCIAL SERVICES, INC.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.


.

Timothy Sullivan, Thompson Coburn, LLP, of Washington, DC, argued for plaintiff-appellant.

A. Bondurant Eley, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With her on the brief were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, and Bryant G. Snee, Deputy Director.

Appealed from: United States Court of Federal Claims

Senior Judge Bohdan A. Futey

# United States Court of Appeals for the Federal Circuit

2009-5076

SAVANTAGE FINANCIAL SERVICES, INC.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Appeal from the United States Court of Federal Claims
in 08-CV-021 and 09-CV-113, Senior Judge Bohdan A. Futey.

_____

DECIDED:  February 22, 2010

_____

Before NEWMAN, BRYSON, and PROST, Circuit Judges.

BRYSON, Circuit Judge.

In this pre-award bid protest case, Savantage Financial Services, Inc., challenges the terms of a request for proposals from the Department of Homeland Security ("DHS").  The request sought proposals to implement an agency-wide financial, acquisition, and asset management system.  The request required proposers to offer a system that is integrated and currently fully operational within the federal government.  Although the Court of Federal Claims had previously enjoined DHS from using an earlier solicitation, the court concluded that the requirements of the new solicitation were not unlawful.  Savantage appeals, contending that the new solicitation, like the previous

one, unduly restricts competition, in violation of the Competition in Contracting Act ("CICA"), 10 U.S.C. § 2304(a)(1).

I

DHS was established in 2003 through the merger of 22 federal agencies. As a result of the merger, DHS inherited five different financial management software systems and a number of different acquisition management and asset management systems. The use of different financial systems within the agency has caused logistical difficulties and has been the subject of criticism and concern from federal auditors and lawmakers. As a result, DHS has devoted considerable effort to obtaining an integrated financial, acquisition, and asset management system.

In January 2004, DHS launched its first effort to integrate its financial systems through a project entitled Electronically Managing Enterprise Resources for Government Effectiveness and Efficiency ("eMerge$^2$"). The plan underlying the eMerge$^2$ project was to purchase commercial off-the-shelf software products and to integrate them so as to facilitate communication among all the Department's components. That project was a complete failure; in December 2005, after spending $52 million with no discernible results, the agency abandoned the eMerge$^2$ program.

DHS initiated its second effort to integrate its financial systems in 2007, through the Transformation and Systems Consolidation ("TASC") initiative. Its initial request for proposals contained a series of task orders proposing the "migration" of all DHS components to one of two integrated "shared software baselines" already in use within the agency: (1) the Oracle financial management system integrated with the Compusearch PRISM and Sunflower Assets systems, or (2) an integrated system from

Systems Applications Products ("SAP").  In response, Savantage filed a pre-award bid protest with the Court of Federal Claims in January 2008.  In April 2008, the court ruled in favor of Savantage, concluding that DHS's decision to require migration to the Oracle or SAP financial software systems constituted an improper sole-source procurement.  See Savantage Fin. Servs., Inc. v. United States ("Savantage I"), 81 Fed. Cl. 300, 308 (2008).  The court enjoined DHS from proceeding with its solicitation until it had conducted a competitive procurement.  Id. at 311.

Following the court's ruling, DHS spent 10 months conducting market research regarding the integration and implementation of financial systems in an effort to develop a new solicitation.  The result was a new request for proposals, issued on January 9, 2009, and amended on February 14, 2009.  The new request sought a financial, acquisition, and asset management system that "will be provided as an integrated solution that is currently fully operational in the Federal government."  The new TASC procurement was to be conducted as "a full and open competition" in two separate phases: (1) identification of viable offerors through submission of information to DHS; and (2) submission and demonstration of proposals by viable offerors.

That process was halted following the receipt of the first phase submissions, when Savantage filed the present bid protest action with the Court of Federal Claims. Savantage argued that DHS's requirements unduly restricted full and open competition, in violation of CICA, because the requirements effectively eliminated all solutions except for Oracle-based systems.  Both parties moved for judgment on the administrative record.

In an April 2009 opinion, the trial court denied the protest, holding that Savantage "ha[d] not met its burden of demonstrating that the requirement of a fully integrated, currently operational system lacks a rational basis" and thus "defer[ring] to the agency's discretion in determining its own needs." Savantage Fin. Servs., Inc. v. United States ("Savantage II"), 86 Fed. Cl. 700, 706 (2009). Savantage appealed to this court.

On appeal, Savantage argues that by requiring a system that is integrated and currently operational in the federal government, the new solicitation unduly restricts competition. Savantage contends that DHS's attempts to justify those requirements are based on conclusory statements lacking factual support in the administrative record. Savantage further asserts that DHS's requirements effectively guarantee that only the Oracle financial management product (coupled with the PRISM acquisition management and the Sunflower asset management products) will qualify for selection. According to Savantage, the requirements of the new solicitation are pretextual, disguising DHS's efforts to favor Oracle—one of the solutions DHS was enjoined from selecting by specific designation in the prior solicitation.

II

In a bid protest case, an agency's action must be set aside if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. See Bannum, Inc. v. United States, 404 F.3d 1346, 1351 (Fed. Cir. 2005); see also 28 U.S.C. § 1491(b)(4); 5 U.S.C. § 706(2)(A). The court's task is to determine whether "(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." Weeks Marine, Inc. v. United States, 575 F.3d 1352, 1358 (Fed. Cir. 2009). Savantage does not allege a procedural

violation, but argues that DHS's restrictions on the solicitation lacked a rational basis and were therefore unlawful.

Contracting officers "are entitled to exercise discretion upon a broad range of issues confronting them in the procurement process." Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332 (Fed. Cir. 2001). For that reason, procurement decisions "invoke[] 'highly deferential' rational basis review." CHE Consulting, Inc. v. United States, 552 F.3d 1351, 1354 (Fed. Cir. 2008). Under that standard, we must sustain an agency action unless the action does not "evince[] rational reasoning and consideration of relevant factors." Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054, 1058 (Fed. Cir. 2000). Upon review of the record in this case, we agree with the trial court that there is a rational basis for the three contested requirements of the new solicitation: (1) that the proposed financial, acquisition, and asset management system be "integrated"; (2) that it be "currently fully operational"; and (3) that it be "currently fully operational in the Federal government."

With respect to the requirement that the system be integrated, we agree with the trial court that it is "logical that [DHS] would want to ensure its success by seeking a fully integrated system, both on the basis of its own experiences and those of other agencies and departments." Savantage II, 86 Fed. Cl. at 706. As the administrative record amply shows, the failure of DHS's own eMerge[2] project—largely due to the contractors' inability to provide functional integration among components—underscored the risks of building an entirely new system using separate, unintegrated, off-the-shelf components. Internal DHS documents indicate that the Department responded to that failure by rejecting a piecemeal approach and electing to acquire a core financial

system pre-integrated with other key systems. As we have held, an agency "has no obligation to point to past experiences substantiating its concerns in order to survive rational basis review . . . [as CICA does not require the agency] to supply a historical record of failures to substantiate a risk." CHE Consulting, 552 F.3d at 1355. Nonetheless, DHS's prior "fifty-two million-dollar failure at integration," Savantage II, 86 Fed. Cl. at 705, provides support for its decision to obtain a pre-integrated system.

Savantage contends that there is no justification for DHS's choice of a pre-integrated solution, rather than implementing a core financial system first and then separately integrating and implementing feeder systems. Savantage points to evidence that building a fully integrated solution at the outset is more difficult than subsequently integrating feeder systems into a core financial system, and that a pre-integrated solution is thus more likely to fail. On a question such as whether to implement a pre-integrated system or to build a system by beginning with a core financial system and then integrating other systems afterwards, an agency's preferences are entitled to great weight. As the trial court noted, "competitors do not dictate an agency's minimum needs, the agency does." Savantage II, 86 Fed. Cl. at 706. And determining an agency's minimum needs "is a matter within the broad discretion of agency officials . . . and is not for [the] court to second guess." Wit Assocs., Inc. v. United States, 62 Fed. Cl. 657, 662 (2004). We agree with the trial court that Savantage has failed to meet its burden of showing that the agency's decision to require a fully integrated system is so plainly unjustified as to lack a rational basis.

Similarly, DHS's requirement that the financial management, asset, and acquisition system be currently fully operational cannot be considered unreasonable.

Having already failed to build an operational system from the ground up, DHS could reasonably prefer a system that is already operating successfully. Savantage's contention that a pre-integrated system is difficult to implement supports DHS's decision to require a system that has been shown to work.

Savantage focuses principally on DHS's final requirement, that the system be currently operational in the federal government. Savantage asserts that the administrative record is devoid of evidence connecting DHS's needs to that requirement of the new solicitation. We disagree.

Contrary to Savantage's suggestion, DHS was not required to synthesize its thinking and its market research into a prelitigation written explanation of the rationale for each of the solicitation requirements. DHS's rationale for its "in the federal government" requirement is apparent from, and supported by, the agency record. The $52 million loss resulting from the failed eMerge[2] program, which was discussed in June 2007 testimony before a Senate Committee, prompted DHS to investigate ways to leverage its resources and those of other federal agencies to save money and avoid unnecessary duplication of efforts. See Meeting the Challenge: Are Missed Opportunities Costing Us Money?: Hearing Before the Subcomm. on Fed. Fin. Mgmt., Gov't Info., Fed. Servs., and Int'l Sec. of the S. Comm. on Homeland Sec. & Governmental Affairs, 110th Cong. 27-39 (2007). The "process overview" of the new request for proposals explains the need to "leverage the tremendous investment that DHS and the Federal government have made" and to "utilize and reuse work already completed" within the federal government. DHS's TASC documentation also expresses the agency's intention to comply with Office of Management and Budget Circular A-130.

While Circular A-130 does not directly favoring the sharing of information systems, it expresses a preference for "satisfy[ing] new information needs through interagency or intergovernmental sharing of information . . . , where appropriate, before creating or collecting new information." OMB, Circular No. A-130 § 8(a)(1)(d).

In addition, numerous DHS documents express the need for a system that complies with standards and requirements specific to the government and to DHS. For example, the solicitation's statement of objectives explains that success in achieving DHS's goals of producing timely, accurate, and useful financial information and ensuring the integrity of internal controls and clean audit reports "rests upon an integrated core financial management system that meets FSIO [Financial Systems Integration Office] and DHS-specific requirements," and complies with statutory and regulatory standards. As DHS has explained, federal government accounting practices differ significantly from those of private commercial entities. Although Savantage asserts that the requirement of FSIO compliance alleviates any concerns regarding the viability of systems from outside the federal government, the FSIO requirement does not render irrational DHS's insistence on a contractor with experience in successfully executing a task of a similar nature, context, and scope.

Savantage argues that this case is similar to Redland Genstar, Inc. v. United States, 39 Fed. Cl. 220 (1997), in which the Court of Federal Claims held that changes to procurement requirements were unsupported by rationales belatedly offered by the Army Corps of Engineers. Unlike this case, Redland concerned an agency's changes to its requirements (and attempted justifications) after the filing of a bid protest; the court nevertheless considered the late-proffered justifications, but concluded that those

justifications were unpersuasive. 39 Fed. Cl. at 232-34. Like bid protest cases generally, the decision in Redland is highly fact-specific. Whether an agency's explanation for its bid proposal requirements is reasonable depends on the particular circumstances of each case; in this case, we find nothing unreasonable in the means DHS has devised to improve its likelihood of success in obtaining the agency-wide financial system that it has pursued, so far unsuccessfully, for more than six years.

Finally, we find no support for Savantage's argument that DHS's requirements constitute a pretextual attempt to circumvent the trial court's earlier injunction and procure an Oracle-based system. As an initial matter, government officials are presumed to act in good faith. See Alaska Airlines, Inc. v. Johnson, 8 F.3d 791, 795 (Fed. Cir. 1993) ("[T]here is a presumption that public officers perform their duties correctly, fairly, in good faith, and in accordance with the law and governing regulations . . . . [T]his presumption stands unless there is irrefragable proof to the contrary."). There is no evidence in the record to suggest that DHS acted with intent to injure Savantage or any other potential bidder. See Galen Med. Assocs., Inc. v. United States, 369 F.3d 1324, 1330 (Fed. Cir. 2004) ("In the cases where the court has considered allegations of [governmental] bad faith, the necessary 'irrefragable proof' has been equated with evidence of some specific intent to injure the plaintiff.").

Savantage's "pretext" argument rests on its contention that DHS's new solicitation requires the use of the PRISM acquisition management system and the Sunflower asset management system, which are already used by several of DHS's components. Although the solicitation does not require the use of the PRISM and Sunflower systems, Savantage argues that in light of the widespread current use of

those systems by DHS components, "it doesn't take much analysis to deduce DHS's unstated requirement that the integrated solution must include the PRISM and Sunflower systems." Savantage further argues that, among the integrated systems currently in operation in the federal government, only Oracle is integrated with the PRISM and Sunflower systems. Accordingly, Savantage contends that the solicitation, although general in form, is designed to ensure that an Oracle-based system is selected.

Savantage's argument that DHS is committed to an integrated system using PRISM and Sunflower components is speculative and lacks support in the record. The Frequently Asked Questions for the new solicitation explicitly states that "[o]fferors are free to propose any software and solutions, if appropriate to meet DHS' requirements" and that "corporate experience is not limited to previous experience within DHS." Other DHS documents contrast the new solicitation, which seeks a solution from either inside or outside DHS, with the previous solicitation, which limited solutions to those already in use within DHS. Finally, there is record support for DHS's assertion that at least two systems other than Oracle are presently integrated and fully operational within the federal government. Therefore, we reject Savantage's contention that DHS's requirements constitute a pretextual cover for demanding an Oracle-based system.

Because we agree with the trial court that DHS has a rational basis for requiring an integrated financial, acquisition, and asset management system that is currently fully operational within the federal government, we uphold the judgment of the Court of Federal Claims.

AFFIRMED.