# United States Court of Appeals for the Federal Circuit

---

**PAI CORPORATION (DOING BUSINESS AS PROFESSIONAL ANALYSIS),**
*Plaintiff-Appellant,*

**v.**

**UNITED STATES,**
*Defendant-Appellee,*

**AND**

**INNOVATIVE TECHNOLOGY PARTNERSHIPS, LLC,**
*Defendant.*

---

2010-5003

---

Appeal from the United States Court of Federal Claims in Case No. 09-CV-411, Senior Judge John P. Wiese.

---

Decided: August 5, 2010

---

CYRUS E. PHILLIPS IV, of Arlington, Virginia, argued for plaintiff-appellant.

CHRISTOPHER L. KRAFCHEK, Trial Attorney, Commercial Litigation Branch, Civil Division, United States

Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and MARTIN F. HOCKEY, JR., Assistant Director.

_____

Before BRYSON, GAJARSA, and PROST, *Circuit Judges.*

GAJARSA, *Circuit Judge.*

This is a bid protest case filed by a losing bidder complaining of the unfairness of the contract bidding process. PAl Corporation ("PAI") filed a bid protest in the Court of Federal Claims ("trial court") challenging the award of a support services contract to Innovative Technology Partnerships, LLC ("ITP") by the Department of Energy's Office of Secure Transportation. PAl argues that the award of the contract to ITP was unlawful because the Department of Energy failed to mitigate a potential organizational conflict of interest during the procurement, which allegedly provided a certain bidder an unfair advantage in submitting its bid. Specifically, PAl alleges that ITP held an unfair competitive advantage over other offerors by gaining access to non-public information through: (1) ITP's proposed employment of the present incumbent contractor, Wackenhut Services, Inc. ("Wackenhut"), as its subcontractor, and (2) ITP's concomitant performance as the audits/assessment contractor under the Office of Secure Transportation's Program Office of Independent Oversight contract. The trial court found that the integrity of the procurement was not compromised and entered judgment in favor of the government based on the administrative record. *PAl Corp. v. United States*, No. 09-cv-411, 2009 WL 3049213, at *11 (Fed. CI. 2009). PAI appeals to this court. Because the trial court did not commit any errors, as explained and set forth below, we affirm.

BACKGROUND

The Office of Secure Transportation ("OST"), a division of the Department of Energy ("DOE"), is responsible for the safe and secure transportation of all government-owned nuclear weapons and materials. On December 13, 2007, DOE issued a "Sources Sought Synopsis" notice seeking qualified small businesses capable of carrying out certain OST support services.[1] In response to the Sources Sought Synopsis notice, DOE received twenty responses from interested bidders. After reviewing their statements of capability, DOE determined that two or more small businesses were capable of performing the required services as outlined by the performance work statement. DOE then designated the proposed procurement as a "total small business set-aside" pursuant to 48 C.F.R. § 19.502-2.

On July 11, 2008, prior to the release of the final proposed solicitation, DOE received an agency-level protest from Global Engineering & Technology ("GET") alleging that the draft solicitation created an organizational conflict of interest. Specifically, GET alleged that any company partnering with the incumbent contractor,

---

[1] The OST support services were identified in the performance work statement as the following sixteen task areas: (1) paramilitary training programs support; (2) analysis, design, and development of training curricula and training plans; (3) logistical support of OST programs; (4) property management; (5) equipment operators; (6) munitions support; (7) armorer support; (8) mission related work; (9) shipping, receiving, tagging, storage, and issuance of equipment and supplies; (10) contractor transportation and utilization program; (11) quality assurance program; (12) safety program; (13) program and management analysis; (14) resources and business management support; (15) fleet vehicle management support; and (16) safeguards and security.

Wackenhut, would have an unfair competitive advantage because that company would gain unequal access to non-public information as a result of Wackenhut's performance of the prior OST support services contract. GET also alleged that DOE failed to provide sufficient information regarding the staffing levels necessary to support the sixteen task areas outlined in the performance work statement.

After consideration of GET's protest, DOE determined that GET could not protest the draft solicitation before it had been approved for final release. However, in the interest of promoting competition and to level the playing field for all potential bidders, DOE agreed to provide offerors with additional information regarding the former OST support services contract, previously performed by Wackenhut. Accordingly, DOE launched the OST support services contract website to provide specific information to the public regarding the procurement. The website included the former OST support services contract that was being performed by the incumbent contractor, Wackenhut. It also provided information regarding OST command structure, mission, logistics, property management, and specialized training for OST Federal Agents. In addition, DOE released a twelve-month overview of the direct labor hours for each of the task areas and an estimated training calendar required to implement the OST support services.

On August 29, 2008, DOE issued a final competitive contract solicitation to provide support services for OST. The solicitation would result in a single indefinite-delivery, indefinite-quantity cost-plus-award-fee type contract for a base period of two years and two eighteen-month option periods. The guaranteed minimum amount of designated services under the contract was $3 million and the maximum ordering limit was $95 million.

DOE received nine timely proposals from small businesses, including ITP, PAI, and Advanced Technologies and Laboratories International, Inc. ("ATL"). ITP's proposal announced its intention to partner with Wackenhut, the incumbent for the OST support services contract, to perform the current OST contract. The contracting officer conducted an initial review of the proposals to determine whether they included all information required by the solicitation. The contracting officer also ensured that the organizational conflict of interest disclosures submitted by the bidders revealed no actual or potential conflicts. On December 22, 2008, the Source Selection Authority selected ITP as the bidding offeror that provided the best value to the government in terms of cost and technical capabilities. On December 29, 2008, the contracting officer awarded the contract to ITP.

On January 12, 2009, ATL filed a protest with the Government Accountability Office alleging (1) organizational conflicts of interest involving ITP, Wackenhut, and DOE that were not properly mitigated or disclosed prior to the procurement, (2) improper evaluation of ATL's and ITP's proposed costs, and (3) improper evaluation of ITP's and ATL's technical proposals. In response to ATL's protest, an Integrated Project Team of DOE agreed to take corrective action to clarify and resolve, where appropriate, the raised organizational conflict of interest issues, the cost realism evaluation, and the past performance evaluation. The Integrated Project Team further agreed to document its findings and issue a new source selection decision. Accordingly, ATL withdrew its protest on February 19, 2009. As part of its corrective action, the Integrated Project Team reevaluated proposals for past performance and cost and reconsidered potential organizational conflicts of interest.

In response to ATL's protest, the contracting officer completed an additional comprehensive organizational conflict of interest investigation and provided her conclusions in a memorandum entitled "Organization Conflict of Interest Analysis," issued on June 8, 2009. First, the contracting officer noted that she had reviewed the offerors' submissions regarding any potential organizational conflicts of interest and determined that no significant potential conflict existed. In particular, the contracting officer determined that, although ITP and Wackenhut had access to non-public information through their existing contracts, such information had no competitive value in the present procurement. The contracting officer also found that, with respect to ITP, the information to which it had access involved constantly changing requirements, was quickly outdated, and was therefore of little value. With respect to Wackenhut, the contracting officer also determined that the information to which it had access was not relevant to the requirements addressed in the solicitation's first two sample task orders. In the case of the third sample task order, the contracting officer found that Wackenhut's access to non-public information had been effectively offset by other information disclosed in the solicitation.

Next, the contracting officer noted that DOE's released information was sufficient to guide offerors in preparing an effective technical proposal. Thus, the contracting officer concluded that no significant potential conflict existed that would preclude an award to ITP for the OST support services contract. On June 4, 2009, the Integrated Project Team briefed the Source Selection Authority which then selected ITP because the company's bid represented the best value to the government due to its highest technical rating and lowest probable cost.

Shortly thereafter, PAI filed a complaint in the Court of Federal Claims alleging, *inter alia*, that the integrity of the procurement was compromised by an alleged unequal access to information relating to an organizational conflict of interest.[2] The parties filed cross-motions for judgment on the administrative record. The Court of Federal Claims denied PAI's motion, granted the government's and ITP's motions, and dismissed PAI's complaint. *See PAI Corp.*, 2009 WL 3049213, at *11. PAI timely appealed to this court. We have jurisdiction to review final decisions of the Court of Federal Claims pursuant to 28 U.S.C. § 1295(a)(3).

### DISCUSSION

We review rulings on motions for judgment on the administrative record *de novo*. *Norfolk Dredging Co. v. United States*, 375 F.3d 1106, 1108 (Fed. Cir. 2004). We also review factual findings based on the administrative record for clear error. *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308, 1312 (Fed. Cir. 2007). In a bid protest case, an agency's decision to award a contract must be upheld unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Bannum, Inc. v. United States*, 404 F.3d 1346, 1351 (Fed. Cir. 2005). The court must determine whether "(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1358 (Fed. Cir. 2009).

Contracting officers "are entitled to exercise discretion upon a broad range of issues confronting them in the procurement process." *Impresa Construzioni Geom.*

---

[2] PAI also challenged at the trial court DOE's technical and price evaluation; however, those issues are not raised on this appeal.

*Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001) (internal quotation marks omitted). Accordingly, procurement decisions are subject to a "highly deferential rational basis review." *CHE Consulting, Inc. v. United States*, 552 F.3d 1351, 1354 (Fed. Cir. 2008) (internal quotation marks omitted). Applying this highly deferential standard, the court must sustain an agency action unless the action does not "evince[ ] rational reasoning and consideration of relevant factors." *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000) (alterations added).

The issue before us is whether an organizational conflict of interest is so pervasive as to have created an advantage to one bidder over the others, and whether the contracting officer failed to exercise proper discretion and to follow proper procedures in making the determination that no organizational conflict of interest existed. The Federal Acquisitions Regulations ("FAR") recognize that "the identification of [organizational conflicts of interest] and the evaluation of mitigation proposals are fact-specific inquiries that require the exercise of considerable discretion." *Axiom Res. Mgmt. v. United States*, 564 F.3d 1374, 1382 (Fed. Cir. 2009) (citing 48 C.F.R. § 9.505). FAR requires that "[e]ach individual contracting situation should be examined on the basis of its particular facts and the nature of the proposed contract. The exercise of common sense, good judgment, and sound discretion is required in both the decision on whether a significant potential conflict exists and, if it does, the development of an appropriate means for resolving it." 48 C.F.R. § 9.505 (2004); *see also Axiom*, 564 F.3d at 1382 (citing *ARINC Eng'g Servs. v. United States*, 77 Fed. Cl. 196, 202 (2007) ("The responsibility for determining whether such unequal access exists and what steps should be taken in

response thereto rests squarely with the contracting officer.")).

This court will not overturn a contracting officer's determination unless it is arbitrary, capricious, or otherwise contrary to law. *John C. Grimberg Co. v. United States*, 185 F.3d 1297, 1300 (Fed. Cir. 1999). To demonstrate that such a determination is arbitrary or capricious, a protester must identify "hard facts"; a mere inference or suspicion of an actual or apparent conflict is not enough. *C.A.C.I., Inc.-Fed. v. United States*, 719 F.2d 1567, 1581 (Fed. Cir. 1983); *Filtration Dev. Co., LLC v. United States*, 60 Fed. Cl. 371, 380 (2004) (holding that the disappointed bidder failed to provide "any factual basis" to establish the existence of an organizational conflict of interest).

PAI's sole argument of legal error on appeal is that the contract award to ITP is unlawful because the contracting officer failed to comply with the applicable FAR in issuing the solicitation. Specifically, PAI alleges that the contracting officer's organizational conflict of interest analysis violates 48 C.F.R. §§ 9.504(a) and 9.506(b). PAI asserts that, in order to comply with these regulations, the contracting officer is required to (1) analyze any type of conflict that may arise during the procurement, including apparent or potential conflicts, and (2) document in writing a plan to neutralize any type of conflict before a solicitation is issued. However, PAI's argument conflates the requirements of the two regulations.

Section 9.504(a) requires that a contracting officer "(1) [i]dentify and evaluate potential organizational conflicts of interest as early in the acquisition process as possible; and (2) [a]void, neutralize, or mitigate *significant potential conflicts* before contract award." 48 C.F.R. § 9.504(a) (emphasis added). This regulation requires a contracting

officer to identify and evaluate potential conflicts in the early stages of the acquisition process. Section § 9.504(a) does not require that this preliminary analysis be documented in writing, but if a potential conflict is identified, the regulation specifies that the contracting officer must avoid, neutralize, or mitigate any "significant potential conflicts" before the contract award. *Id.* § 9.504(a). A significant potential conflict is one which provides the bidding party a substantial and unfair competitive advantage during the procurement process on information or data not necessarily available to other bidders. *See ARINC*, 77 Fed. Cl. at 202. Section 9.504(a) therefore requires mitigation of "significant potential conflicts," but does not require mitigation of other types of conflicts, such as apparent or potential non-significant conflicts. The contracting officer does have considerable discretion in determining whether a conflict is significant. Moreover, the FAR provides a contracting officer with considerable discretion to conduct fact-specific inquiries of acquisition proposals to identify potential conflicts and to develop a mitigation plan in the event that a significant potential conflict exists. 48 C.F.R. § 9.505; *see also Axiom*, 564 F.3d at 1382.

In contrast to § 9.506(a), § 9.506(b) specifies a unique documentation requirement once a "significant potential organizational conflict" is deemed to exist. 48 C.F.R. § 9.506(b). This regulation requires that, in the event "the contracting officer decides that a particular acquisition involves a *significant potential organizational conflict* . . . , the contracting officer shall, before issuing the solicitation, submit . . . [a] written analysis, including a recommended course of action for avoiding, neutralizing, or mitigating the conflict . . . ." *Id.* (emphasis added). Moreover, § 9.506(b) requires that, if the contracting officer makes such a determination, the written analysis

be approved by the chief of the contracting office. *Id.* This regulation requires a written analysis, but only for "significant potential conflict[s]." *Id.* (alteration added). Thus, the contracting officer is not required to document in writing or submit for approval a plan to neutralize apparent or potential conflicts, which in her discretion and judgment are deemed not to be significant.

In this case, the contracting officer fully complied with the FAR requirements. First, the contracting officer timely identified and evaluated any potential conflicts in compliance with § 9.504(a). After GET filed the agency-level protest in July 2008, the contracting officer pursued a number of steps to resolve any potential conflicts, including narrowing the technical scope of the solicitation, providing to the potential offerors additional information regarding the OST support services contract, and requiring that each potential offeror certify that its participation in the procurement did not create any organizational conflicts of interest. The contracting officer also completed an additional and comprehensive conflicts investigation in June 2009. In a written memorandum, the contracting officer noted that she had thoroughly reviewed the offerors' submissions regarding any potential organizational conflicts of interest. The contracting officer determined that no significant potential conflict existed that would preclude an award of the OST support services contract to ITP. Furthermore, because the contracting officer determined that no significant potential conflict existed, she was not required to submit a written analysis pursuant to § 9.506(b), nor was she required to obtain approval from the chief contracting officer for adjustments to the solicitation. In light of the considerable discretion given to contracting officers in identifying and mitigating significant potential conflicts, we agree

with the trial court that the contracting officer in this case complied with the FAR requirements.

Moreover, PAI failed to establish that there was any significant potential conflict that provided ITP with an unfair competitive advantage during the procurement. *See ARINC*, 77 Fed. Cl. at 202. PAI failed to introduce any evidence before the trial court showing that ITP gained a substantial and unfair competitive advantage through unequal access to information. *See C.A.C.I.*, 719 F.2d at 1581 (stating that a disappointed bidder must identify "hard facts" to overturn an agency's award of a contract). Moreover, PAI's bare allegation that ITP and Wackenhut had a prior contractual relationship with OST is insufficient to show a significant potential conflict. *Id.* "The mere existence of a prior or current contractual relationship between a contracting agency and a firm does not create an unfair competitive advantage, and an agency is not required to compensate for every competitive advantage gleaned by a potential offeror's prior performance of a particular requirement . . . ." *ARINC*, 77 Fed. Cl. at 203; *see also Ala. Aircraft Indus. Inc.-Birmingham v. United States*, 83 Fed. Cl. 666, 686 (2008) (holding that incumbent status by itself is insufficient to create an organizational conflict of interest). Accordingly, we find that PAI failed to establish the existence of a significant potential conflict and thus failed to show that the integrity of the procurement was compromised.

**AFFIRMED**