# United States Court of Federal Claims

No. 16-236 C
(Filed Under Seal: November 17, 2016)
(Reissued: December 2, 2016)*

_____

**TIBER CREEK CONSULTING, INC.,**

      *Plaintiff,*

**v.**

**THE UNITED STATES,**

      *Defendant,*

**and**

**ARROWPOINT, INC.,**

      *Defendant-Intervenor.*

_____

Bid Protest; Post Award; Motion for Judgment on Administrative Record; Price Realism Analysis; Best Value Determination; Non-Incumbent Awardee; CMMI Level 3 Certification; Balance of Cost and Technical Expertise

 

*Heather A. James, Esquire,* Whiteford, Taylor and Preston, LLP, Washington, DC, for plaintiff.

*Richard P. Schroeder, Esquire*, United States Department of Justice, Civil Division, Washington, DC, for defendant.

*Lee Dougherty, Esquire*, Offit Kurman, P.A., Tysons Corner, VA, for defendant-intervenor.

## OPINION AND ORDER

**Hodges,** *Senior Judge***.**

This is a bid protest case. Tiber Creek is plaintiff; intervenor is ArrowPoint. The United States is defendant. The issue is whether a substantially higher bid price was justified by a higher level of technical expertise. That is, did the Request for Proposals ("RFP") and other pre-bid

---

* The parties filed no proposed redactions to the sealed Opinion filed on November 17, 2016. The Opinion is reissued this date, unsealed.

documents permit the Government to award this contract to ArrowPoint because its bid price was $10 million less than Tiber Creek's, even though Tiber Creek's technical expertise was superior.

The National Guard Bureau issued invitations to bid for a contract that would provide computer technology to assist the Army Reserve National Guard in fulfilling its critical missions, especially including RCMS. RCMS is Reserve Component Manpower System, a "comprehensive suite of software applications and modules that provide action officers and senior leaders critical information needed to enhance their decision-making process." Administrative Record at Tab 4:42. RCMS is described as a "highly sophisticated, complex information system."

Judicial review in procurement cases is limited to a relatively mechanical process governed by the Administrative Procedure Act, 5 U.S.C.S. §§701-706. The standard of review provided by that Act is whether the decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C.S. §706(2)(A). The courts consider whether the procuring agency's procedures were consistent with federal rules and regulations. *See e.g.*, *Savantage Fin. Servs. v. United States*, 595 F. 3d 1282, 1285-86 (Fed. Cir. 2010) ("The court's task is to determine whether [1] the procurement official's decision lacked a rational basis, or [2] the procurement procedure involved a violation of regulation or procedure.") (quoting *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1358 (Fed. Cir. 2009)). This standard creates a heavy burden for one who would overturn an agency decision.

The Government acknowledged that plaintiff Tiber Creek showed a higher level of technical expertise than ArrowPoint. The National Guard Bureau awarded the contract to ArrowPoint because the difference between Tiber Creek and ArrowPoint's levels of expertise did not warrant the substantial difference in bid price. Tiber Creek's bid price was approximately $50 million; ArrowPoint's was $40 million. An agency award based on such a balancing between cost and technical benefits is not necessarily improper so long as it is made according to agency procurement rules and regulations.

The Administrative Record does not show that the National Guard Bureau acted unfairly in awarding this contract to intervenor ArrowPoint, according to the standards of review that we apply in bid protest cases. For that reason, we must grant defendant's motion for judgment on the Administrative Record, and deny plaintiff's motion for judgment on the Administrative Record.

**BACKGROUND**

The National Guard Bureau issued a Request for Proposals for this re-compete of a firm fixed-price indefinite delivery, indefinite quantity contract in October 2014. The one-year contract is a 100% small business set-aside with four one-year option periods; plaintiff is the incumbent. The RFP provided that price would not be the sole determinant in awarding the contract, as various non-cost factors would be considered. The contracting officer would conduct a best-value analysis if necessary to determine whether a technically superior offer justified a substantially higher cost to the Government.

The contracting officer awarded the contract to ArrowPoint in May 2015. Tiber Creek requested a post-award briefing and thereafter filed a protest to GAO. The Agency then conducted a new source-selection process and issued a new award. The result was the same, however: ArrowPoint won the contract. Tiber Creek protested again and GAO denied the protest in January of this year. Plaintiff then filed a bid protest in this court on February 17, 2016.

Plaintiff has standing to bring this action because it is an "interested party" pursuant to 28 U.S.C. 1491(b)(1). That is, its economic interest is affected by the outcome. *See e.g., AFGE, Local 1482 v. United States*, 258 F.3d 1294, 1302 (Fed. Cir. 2001) (standing "is limited to actual or prospective bidders or offerors whose direct economic interest would be affected by the award of the contract or by failure to award the contract.").

## DISCUSSION

Very generally stated, plaintiff's arguments tend to emphasize its own superior ratings and general competence with regard to each element of the contract. Defendant and intervenor respond in most instances by urging us to apply legal principles that call for standards of review that are highly deferential to agencies' decisions.

Plaintiff's concerns regarding the fairness and propriety of this procurement are: (1) requirements concerning CMMI Level 3 certification; (2) consideration of differences in technical expertise; (3) price realism analysis; and (4) best value determination.

### A. CMMI Level 3 Requirements

CMMI is Capability Maturity Model Integration. Level 3 refers to a quality standard that is awarded to contractors "based on a company's consistent demonstrated use of documented practices," according to plaintiff. Tiber Creek is CMMI Level 3 certified; ArrowPoint is not.

Plaintiff contends that award of the contract to ArrowPoint violated terms of the agency's Request for Proposals in that the agency did not reasonably evaluate intervenor's compliance with CMMI Level 3 requirements. Tiber Creek explains that the CMMI certification is "meant to ensure that contractors have 'proven and mature organizational capabilities to manage the RCMS.'" RCMS is Reserve Component Manpower System, a "comprehensive suite of software applications and modules that provide action officers and senior leaders critical information needed to enhance their decision-making process." AR at Tab 4:42. Plaintiff describes RCMS as a "highly sophisticated, complex information system."

The Agency's Request for Proposals initially required that a winning bidder must be CMM Level 3 qualified; however, amendments to the RFP prior to the bidding process allowed bidders to comply with this requirement by showing that they have CMMI Level 3 certified team members. According to plaintiff, the agency's decision to amend the RFP to permit a bidder to comply through a subcontractor erases the essential meaning of the CMMI Level 3 certification requirement.

The main reason for plaintiff's argument that the general contractor itself should be certified is the importance of management to successful completion of the job. The general contractor must perform critical management and quality assurance functions that call for high levels of experience and expertise. CMMI-certified subcontractors would be assisting, but not directly managing the contract.

Plaintiff contends that even if certification through a subcontractor does not violate terms of the Request for Proposals and the Performance Work Statement, the agency's failure to assess weaknesses in ArrowPoint's proposal is unreasonable and contrary to RFP requirements. The agency's decision to relax the CMMI Level 3 certification requirement was arbitrary and irrational because it was made for intervenor's benefit, plaintiff argues.

Defendant and intervenor respond that the Request for Proposals was amended prior to bidding to "clarify" that the CMMI Level 3 certification requirement could be met by a team member rather than the prime contractor. Plaintiff's argument that the prime contractor itself must be CMMI Level 3 certified adds a requirement that is not supported by the plain language of the Performance Work Statement, defendant contends. Thus, the agency would be evaluating proposals based on specifications outside the scope of the pre-bid documents.

Defendant's contention here is somewhat circular, and it misstates plaintiff's certification arguments to some extent. However, we cannot find support in the Administrative Record for plaintiff's assertion that the agency amended the certification requirement solely to make it possible for ArrowPoint to qualify for this contract.

## B. Technical Evaluations

Disagreements within the National Guard Bureau regarding ArrowPoint's technical expertise caused the incumbent understandable concern. The contracting officer rejected most of his advisory panel's recommendations concerning ArrowPoint's technical qualifications, increasing its grades in that area in most cases. Plaintiff argues that the contracting officer's decision to ignore the panel's advice and to rate ArrowPoint qualified on technical ability is arbitrary and capricious.

The expert advisory panel was convened to assist the contracting officer in evaluating bidders' technical qualifications. This group is known as the Source Selection Evaluation Board. The Board found ArrowPoint's technical qualifications to be substantially less than those of incumbent Tiber Creek. The contracting officer disagreed with these evaluations by the Source Selection Board and increased ArrowPoint's ratings in several instances to higher, qualifying levels.

The contracting officer, as source selection official for the contract, had the authority to act as he did. He had broad discretion to decide how and whether to use the Board's ratings and recommendations, "subject only to the tests of rationality and consistency with the evaluation criteria." *Matter of Gen. Dynamics Info. Tech., Inc.,* B-407057, 2012 WL 4935422 at 4 (Comp. Gen. Oct. 12, 2012).

Plaintiff acknowledges the contracting officer's authority in this regard, but points out that the agency must articulate the reasons for its procurement decision "including a rational connection between the facts found and the choice made" (quoting *Distributed Solutions, Inc. v. United States*, 104 Fed. Cl. 368, 377 (Fed. Cl. 2012)). Tiber Creek finds no "satisfactory" explanation for the contracting officer's decision in the Administrative Record.

The agency decided that "any weaknesses assessed against ArrowPoint . . . would be overcome by minimal experience performing against the requirements." Tiber Creek contends that this assertion "[has] no rational basis." The National Guard Bureau's assertion is somewhat conclusory, but defendant emphasizes again the agency's "broad discretion" in making such determinations and the "heavy burden" assigned to a party who would demonstrate lack of rational basis for agency decisions. *See Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1351 (Fed. Cir. 2004).

A contracting officer is not bound by Selection Board evaluations. The contracting officer has the responsibility and the authority to evaluate offers and make procurement

decisions. *Firstline Transp. Sec., Inc. v. United States*, 100 Fed. Cl. 359 (Fed. Cl. 2011). The Selection Board's duties are limited to an advisory function. The Board identified twelve weaknesses among ArrowPoint's technical sub-factors, but the contracting officer disagreed and explained the reasons for his disagreement. Given his rationale for departing from the Board's conclusions, we must agree with defendant that the contracting officer's action was a legitimate exercise of the agency's discretion.

## C. Price Realism Analysis

Price realism analyses are among the tools that agencies use to determine whether a particular bidder understands its obligations under the contract and has priced all aspects of its performance to insure a profit on the job. Obtaining a "deal" for the Government where a bidder vastly underprices its contractual duties usually is no bargain for an agency. Often, the contractor defaults in the midst of contract performance and the contracting officer must solicit bids for a new contract. If the agency makes a price realism analysis a part of its pre-award process, it should be able to determine whether a lower-cost bidder understands the nature of the work and can realize a profit at the end of the contract.

Where the Request for Proposals requires a price realism analysis, the agency must consider the unique technical approaches proposed by each offeror. *Ala. Aircraft Indus., Inc.-Birmingham v. United States*, 83 Fed. Cl. 666, 696 (Fed. Cl. 2008), *rev'd on other grounds*, 586 F.3d 1372 (Fed. Cir. 2009). Plaintiff makes the following criticisms of the agency's handling of its price realism analysis:

1. ArrowPoint's unrealistic staffing approach. The agency did not consider whether ArrowPoint could perform the contract successfully given its proposed labor rates. Intervenor's proposed labor rates were below plaintiff's. Despite the low labor rates, intervenor hoped to retain plaintiff's incumbent workforce in performing the contract. Plaintiff believes that ArrowPoint would have to spend more on labor than it planned, possibly resulting in a loss on the contract. Alternatively, it would have to hire workers who did not have the expertise and experience of incumbent employees. Its ability to perform the contract would be compromised.

2. The contracting officer's representation that he evaluated intervenor's pricing for realism was "conclusory, boilerplate." The Administrative Record does not support the contracting officer's assertion regarding performance risk and consideration of pricing consistent with its technical proposal.

3. The contracting officer's Supplemental Statement to the Government Accounting Office explained his efforts to conduct a price realism analysis. However, plaintiff terms it a post-hoc rationalization and therefore unreliable.

Defendant and intervenor respond to these assertions by highlighting the "substantial discretion" that agencies enjoy in conducting price realism analyses. Where the solicitation does not include a methodology for conducting such an analysis, the agency's discretion is even greater, they contend.

The purpose of price realism analyses is to consider whether offerors understand the RFP's requirements for performing the contract. Plaintiff's claim that ArrowPoint's technical rating should have been discounted because of its proposed labor rates misapprehends that

purpose. Absent evidence in the Administrative Record that in fact intervenor did not understand the contract's requirements, labor rate estimates were not relevant to the price realism analysis.

## D. Best Value Determination

Best value determinations state their function by the name they carry. The term suggests the breadth of judgment that a government official must exercise in the course of making such a determination. Best value determinations require agency officials to balance the costs of contracts for goods or services to the Government, with the value of benefits to the Government offered by bidders. Such benefits may be technical, but they could be factors such as experience, strength of management, or various intangibles that may be seen as special benefits to the Government. If so, these benefits may offset higher costs of competing bids in the selection process. Making a best value determination requires a series of judgment calls.

Given the nature of a best value determination, and the burdens placed on who would overturn the bid process in general, it is not a surprise that judgment calls by government procurement experts are difficult to reverse. Plaintiff in this case contends that the contracting officer's best value determination was unsupported by the Administrative Record. For example, plaintiff asserts that the record does not show how or whether the advantages of plaintiff's "Superior" technical offering vis-a-vis ArrowPoint's own proposal were considered when the contracting officer made his source selection decision.

Tiber Creek notes that ArrowPoint's technical approach, rated as "Acceptable," had significant weaknesses that were not offset by strengths. Plaintiff believes that such a contractor would require special oversight to complete the contract satisfactorily. The contracting officer decided that plaintiff benefited from natural incumbent advantages in its bid proposal. As intervenor performed the contract, it would meet or exceed plaintiff's operating standards when plaintiff itself performed the contract. In fact, Tiber Creek performed initially at the same level as ArrowPoint when plaintiff was first awarded its incumbent contract, the contracting officer stated. He regarded any differences in strength between plaintiff and intervenor as "marginal."

Plaintiff's own offer demonstrated "an exceptional understanding of the requirements," according to the Source Selection Evaluation Board, and showed strengths and general expertise that intervenor did not possess. AR Tab 59:2164. Tiber Creek points to case law holding that procurement decisions are arbitrary and capricious if the offered explanation runs counter to evidence. *Info. Scis. Corp. v. United States*, 73 Fed. Cl. 70 (Fed. Cl. 2006). The contracting officer's decision on best value has no rational basis, plaintiff believes.

Defendant and intervenor emphasize the "substantial discretion" afforded procurement officials in determining best value. In fact, the contracting officer has even greater discretion in making such a determination than he would if the contract were awarded based on cost alone. *Galen Med. Assocs., Inc. v. United States*, 369 F.3d 1324, 1330 (Fed. Cir. 2004). Courts are "highly deferential" to agency's best value determinations. *Femme Comp Inc. v. United States*, 83 Fed. Cl. 704, 727 (Fed. Cl. 2008).

A disappointed bidder's mere disagreement with most agency decisions regarding bid evaluation and contract award does not meet its burden of showing that the decision was arbitrary and capricious. *See, e.g., AM Gen., LLC v. United States*, 115 Fed. Cl. 653, 696 (Fed. Cl. 2014); *Banknote Corp. of Am. v. United States*, 56 Fed. Cl. 377 (Fed. Cl. 2003). The agency chose to award this contract to ArrowPoint instead of Tiber Creek because it determined that

plaintiff's higher rating on technical factors did not merit the roughly $10 million premium on price.

Such a determination is very difficult to overturn, particularly when the contracting officer gives supporting rationale for his decision. For example, he noted that both offerors had a solid record of past performance, and he anticipated that the applicable sixty-day transition period would allow ArrowPoint to adjust to operational conditions and make other adjustments necessary for satisfactory completion of the contract. While plaintiff might not agree with such judgments, mere disagreement with procurement decisions does not meet a protestor's burden of showing arbitrary and capricious behavior by the Government.

## CONCLUSION

We considered plaintiff's concerns with this procurement carefully, and compared its arguments and contentions with evidence available in the Administrative Record. The contracting officer made reasoned and conscientious decisions in the process of awarding this contract, and he was careful to document or otherwise support his rationale. Just as plaintiff finds it difficult to argue successfully against most judgment calls by the contracting officer, we cannot overrule his rational, well-documented decisions. For the most part, the contracting officer provided adequate explanations supporting his decisions for the Record, normally well beyond the conclusory. In such circumstances, we must deny plaintiff's motion for judgment on the Administrative Record and reject its petition for an injunction.

Plaintiff's Motion for Judgment on the Administrative Record is DENIED. Defendant's Motion for Judgment on the Administrative Record is GRANTED. Intervenor's Motion for Judgment on the Administrative Record is GRANTED. Plaintiff's Petition for Injunction is DENIED. The Clerk of Court will dismiss the complaint. No costs.

**IT IS SO ORDERED.**

s/*Robert H. Hodges, Jr.*
Robert H. Hodges, Jr.
Senior Judge