# United States Court of Appeals for the Federal Circuit

---

**SAFEGUARD BASE OPERATIONS, LLC,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES, B&O JOINT VENTURE, LLC,**
*Defendants-Appellees*

---

2019-2261

---

Appeal from the United States Court of Federal Claims in No. 1:19-cv-00061-MBH, Senior Judge Marian Blank Horn.

---

Decided: March 4, 2021

---

ALEX DANIEL TOMASZCZUK, Pillsbury Winthrop Shaw Pittman LLP, Los Angeles, CA, argued for plaintiff-appellant. Also represented by KEVIN REZA MASSOUDI, AARON RALPH; ALEXANDER BREWER GINSBERG, McLean, VA.

P. DAVIS OLIVER, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee United States. Also represented by JEFFREY B. CLARK, ROBERT EDWARD KIRSCHMAN, JR., DOUGLAS K. MICKLE; JAMES CALVIN CAINE, Federal Law Enforcement Training Centers,

United States Department of Homeland Security, Glynco, GA.

RICHARD WILLIAM ARNHOLT, Bass Berry & Sims PLC, Washington, DC, for defendant-appellee B&O Joint Venture, LLC.  Also represented by BRIAN IVERSON, TODD OVERMAN, ROY TALMOR, SYLVIA YI.

———————————————

Before PROST, *Chief Judge*, NEWMAN and O'MALLEY, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* O'MALLEY.

Dissenting opinion filed by *Circuit Judge* NEWMAN.

O'MALLEY, *Circuit Judge*.

This is a bid protest case involving, *inter alia*, an implied-in-fact contract claim in the procurement context. Disappointed offeror Safeguard Base Operations, LLC ("Safeguard") appeals the final judgment of the United States Court of Federal Claims ("Claims Court") in favor of the eventual contract awardee, B&O Joint Venture, LLC ("B&O"), and the United States ("Government"). During the proposal evaluation process, the Government eliminated Safeguard's proposal from consideration because Safeguard omitted pricing information for sixteen contract line item numbers ("CLINs") totaling $6,121,228.

On appeal, Safeguard asserts that the Claims Court erred by determining that the solicitation at issue required offerors to submit that pricing information and by determining that the solicitation provided notice that elimination was possible if that pricing information was omitted.  Safeguard also contends that, even if it were required to submit the missing pricing information, the Claims Court erred by finding the omissions to be materi-

al and not subject to waiver or clarification.  Finally, Safeguard contends that the Claims Court erred by denying its email request to supplement the administrative record through discovery and by denying its motion to supplement the administrative record with affidavits. Safeguard contends that these additional materials would establish that those evaluating its proposal failed to fairly and honestly consider it.  Because the Claims Court did not err in any of those respects, we affirm.

In so doing, we also address a question of first impression—whether the Claims Court has jurisdiction over a claim that the Government breached an implied-in-fact contract to fairly and honestly consider an offeror's proposal in the procurement context.  That question has received conflicting answers from different Claims Court judges.  We address it and conclude that the Claims Court has such jurisdiction under 28 U.S.C. § 1491(b)(1), making the issue reviewable under the Administrative Procedure Act ("APA").

## I. BACKGROUND

This appeal requires a detailed background discussion.  In particular, we discuss the solicitation at issue, the evaluation process, and the proceedings before the Claims Court.  For a more exhaustive background, see *Safeguard Base Operations, LLC v. United States*, 144 Fed. Cl. 304 (2019).

## A. The Solicitation

On October 11, 2017, the Department of Homeland Security ("Government") issued Solicitation No. HSFLGL-17-R-00001 (the "Solicitation") as a Request for Proposal ("RFP").  The Government sought to award a valuable, potentially multi-year contract for dorm management services at the Federal Law Enforcement Training Center in Glynco, Georgia.  The Solicitation contemplated an

initial base period of performance, followed by up to seven twelve-month option periods.

The Solicitation outlined a commercial item acquisition for a firm-fixed price contract. The acquisition and source selection were to be conducted, *inter alia*, under Federal Acquisition Regulations ("FAR"), Parts 12 and 15 using the best value source selection process.[1] The Government was required to evaluate proposals based on several non-price factors as well as price. The non-price factors were approximately equal in importance to the price factor.

Beyond these general terms, there are several portions of the Solicitation that are relevant to this appeal—(1) the pricing provisions, (2) Schedule B, (3) the elimination provisions, and (4) the clarification and waiver provisions.

### 1. Pricing Provisions

At a minimum, proposals had to show "price and any discount terms." J.A. 1502.[2] The Solicitation explained that "[t]he Government will evaluate offers for award purposes by adding the total price for all options to the total price for the basic requirement." J.A. 1514. Price was to be evaluated using "one or more of the price analysis and/or cost realism techniques outlined in FAR 15.305 and 15.404." J.A. 1519. Further, the Solicitation provided that "[p]rice will be evaluated to determine if the offeror's proposed price is fair and reasonable, complete, balanced and/or realistic." J.A. 1519. "Completeness/Accuracy" meant that "[t]he offeror's proposal is in compliance with the Price Volume instructions in the

---

[1]    The FAR System is codified at 48 C.F.R., Chapter 1. For brevity, we refer to the FAR without corresponding C.F.R. citations.

[2]    We cite to the non-confidential Joint Appendix.

solicitation." J.A. 1519. Those instructions required a "detailed breakdown" of proposed costs by CLIN and a "completed Schedule B." J.A. 1513. If there was a discrepancy between the price proposal and Schedule B, then Schedule B governed.

### 2. Schedule B

Schedule B, which contained the basic terms of the proposed bargained-for exchange, made up the first 30 pages of the Solicitation. In it, the Government listed the supplies/services it sought from offerors by CLIN and included blank spaces for offerors to submit what they would charge in exchange for providing those supplies/services.

The CLINs were four-digit numbers sometimes accompanied by two letters in ascending order—e.g., 0001, 0002, 0002AA, 0002AB, etc.[3] The first digit of each CLIN corresponded to the relevant period of performance. For example, any CLIN with an initial digit of zero concerned the base period, while any CLIN with an initial digit of one concerned the first twelve-month option period. The Solicitation followed this pattern for all seven option periods, repeating the description of each supply/service for each period. For example, the description of a supply/service for CLIN 0001 matched the description of the same supply/service for CLINs 1001, 2001, 3001, 4001, 5001, 6001, and 7001.

Each CLIN had a corresponding quantity and unit as well as blank spaces for offerors to provide the unit price and amount.

As originally issued, the Solicitation in Schedule B pointedly instructed offerors "*****DO NOT SUBMIT

---

[3] The Solicitation uses the terms 'contract line item number' and 'item number' interchangeably.

PRICING FOR THESE CLINS*****" for sixteen CLINs, numbered X007AA and X007AB.[4]  For those CLINs, the Solicitation informed offerors that the Government itself had provided the relevant amounts—even though such information was missing.

Although Schedule B did not contain the necessary amounts, the Solicitation still required that offerors submit subtotals for all CLINs in each time period as well as a grand total for all CLINs in all time periods.  Obviously, it would have been impossible for an offeror to submit accurate subtotals or grand totals without the missing amounts.

At least one potential offeror inquired about the missing amounts.  In response, the Government provided the amounts for each of the 16 CLINs to all offerors and explained that, "For bidding purposes please include the following 'not-to-exceed' amounts in the applicable CLIN." J.A. 2223 (Government's response to Question 9 referencing the Section B Price Schedule and Schedule B).  *See also* J.A. 2225 (Question 16 concerned a similar issue in the context of Volume 3—Price, and the Government referenced its response to Question 9).  While this information was clearly noted in the question and answer portion of Amendment No. 0003, Schedule B itself was never amended.

---

[4]    The sixteen CLINs are 0007AA, 1007AA, 2007AA, 3007AA, 4007AA, 5007AA, 6007AA, 7007AA, 0007AB, 1007AB, 2007AB, 3007AB, 4007AB, 5007AB, 6007AB, and 7007AB.  Like the Claims Court, we refer to these CLINs as X007AA and X007AB, with the "X" representing the initial digit corresponding to the performance period. Throughout this opinion, we quote and cite the Solicitation with respect to the base periods, CLINs 0007AA and 0007AB.  The relevant language is the same for all CLINs X007AA and X007AB.

Notably, the Government responded to several additional questions concerning CLINs X007AA and/or X007AB, and the questions typically referenced the CLINs as appearing in "Schedule B" of the "Section B Price Schedule." *See, e.g.*, J.A. 2223 (Questions 7 and 8). Several questions referenced the "Section B Price Schedule" without referencing "Schedule B" while referring to specific CLINs from Schedule B. *See, e.g.*, J.A. 2224–25 (questions 11–16). One question referenced the "Section B Price Schedule" while referring to Government forms that only appeared in Schedule B. *See* J.A. 2223 (Question 6).

### 3. Elimination Provisions

In general, the Solicitation specified that any non-compliance with its terms and conditions "may cause [an offeror's] proposal to be determined unacceptable or be deemed non-responsive and excluded from consideration." J.A. 1507 (quoting Addendum to FAR 52.212-1(b)(1)). More specifically, elimination was possible under a provision in a portion of the Solicitation labeled 'Section A Solicitation General Information.' That provision stated: "Pricing Schedule and Periods of Performance (POP) Service dates for each CLIN are detailed in Section B. *Note: Exceptions to line item structure in Section B may result in a bid not considered for award.*" J.A. 1350 (emphasis added).

Although the preceding warning was clear, it was also unusual because the portion of the Solicitation labeled 'Section B Price Schedule' did not appear to contain any "line item structure" or pricing schedule and period of performance service dates for "each CLIN." The only such details were found in Schedule B.

### 4. Clarifications and Waiver Provisions

According to the Solicitation, the Government intended to award a contract based on its evaluation of the

proposals "without discussions with offerors." Although the Government reserved the right to conduct discussions if it later deemed them necessary, the Solicitation made clear that all initial offers "should contain the offeror's best terms." J.A. 1505, 4503. The Government contemplated establishing a competitive range *only if* it determined that an award could not be made without discussions. If the Government declined to seek discussions, then the Government was permitted to seek clarifications from offerors, which by nature are less substantive than discussions. *See* J.A. 1350; FAR 15.306**.** The Solicitation also specified that the Government could waive "informalities and minor irregularities" in an offeror's proposal. J.A. 1505 (quoting FAR 52.212-1(g)).

## B. The Evaluation Process

The evaluation process included three selection decisions. In each decision, the Government determined that B&O's proposal provided the best value for the Government. In each decision, the Government faulted Safeguard's proposal because, *inter alia*, Safeguard failed to submit the pricing information for CLINs X007AA and X007AB.

### 1. Critical Personnel

Three contracting personnel played roles in the proposal evaluation process.

First, Joseph Williams was the source selection authority and was tasked with making the final source selection decision. Williams was also tasked with approving any course of action involving the establishment of a competitive range or discussions.

Second, Sheryle Wood was the contracting officer and Source Selection Evaluation Board ("SSEB") chairperson. As the contracting officer, Wood was tasked with deciding whether to recommend establishing a competitive range and to conduct discussions with offerors in that range. As

the SSEB chairperson, Wood was tasked with managing the SSEB's overall activities, distributing workload, and ensuring compliance with source selection information security procedures. Wood also led one of the boards comprising the SSEB—the Price Evaluation Board.

Third, James Caine was legal counsel for the acquisition. Caine was tasked with providing legal advice to Williams and to the SSEB. Caine was a non-voting member of the SSEB and was to "not participate in the caucus process unless specifically asked to do so by the board Leader." J.A. 13 (citation omitted).

### 2. Timeline of Events

On March 16, 2018, the Government received seven proposals from seven offerors, including Safeguard and B&O. On March 22, 2018, Wood completed a Price Evaluation Report and observed that four offerors—including Safeguard—had failed to include the required pricing information for CLINs X007AA and X007AB. Safeguard's proposal did not include pricing for CLINs X007AA and X007AB in any location—including in Safeguard's submitted Schedule B.

Despite this, Wood recommended that Safeguard's price be determined fair and reasonable "without need for discussion or exchanges with regard to price." J.A. 13 (citation omitted). Wood also recommended that Safeguard be retained in the competitive range and that calculation errors, inclusion of the missing pricing information, and full breakdown of phase in costs and other direct costs would be a "discussion element" for all years. J.A. 13. In one portion of the Price Evaluation Report, Wood increased Safeguard's overall price by adjusting it for the missing pricing information.

In the same report, Wood recommended that B&O's price be determined fair and reasonable "without need for discussions or exchanges with regard to price." J.A. 14.

Wood recommended that B&O be retained in the competitive range, once the competitive range was established. J.A. 14.

### i. First Source Selection Decision

On June 8, 2018, Williams completed the first Source Selection Decision Document. Williams indicated that the Government had decided not to establish a competitive range or hold discussions with offerors and that B&O's proposal provided the best value to the Government. Williams noted that only B&O and Prosperitus Solutions could have been awarded a contract without discussions. Williams observed that Safeguard's proposal did not comply with the instructions in several ways, including the failure to include the pricing for CLINs X007AA and X007AB. Williams stated that "awarding to [Safeguard] presents some risk to the Government without a completely revised price proposal accounting for all costs." J.A. 15. Further, "[b]ecause of a non-compliant price proposal, and a price that is unrealistically low, this proposal should have been eliminated from the competition without a technical evaluation." J.A. 15. Even with discussions, a "substantial" update to their technical proposal, and a "completely revised price proposal," it was unlikely that Safeguard would have "become much more competitive." J.A. 15.

On June 14, 2018, the Government sent a pre-award notice to Safeguard indicating that it had selected B&O as the apparent successful offeror. One day later, Safeguard requested a debriefing. On the same day, Wood provided a written debriefing indicating several errors in Safeguard's proposal, including the absence of pricing for CLINs X007AA and X007AB. Wood stated that, even with a number of corrections—including adding the missing CLIN data—the total price was still "well below the IGE [(Independent Government Estimate)] and presents a slight performance risk." J.A. 16. Wood warned

Safeguard to follow the solicitation instructions carefully in future submissions.

On June 21, 2018, Safeguard filed a protest at the Government Accountability Office ("GAO") challenging the award to B&O and the Government's decision to assign Safeguard a deficiency for offering the Government a certain no-charge benefit. It did not protest the Government's other stated reasons for its award decision. On July 16, 2018, the Government indicated it would take corrective action as to the protest item and that Williams would render a new award decision. On July 19, 2018, the GAO dismissed the protest as moot.

### ii. Second Source Selection Decision

On August 2, 2018, Williams issued a second Source Selection Decision Document. Williams raised Safeguard's rating for its technical approach, after removing the protested deficiency, but again noted that Safeguard had omitted the required pricing information. Williams adjusted Safeguard's price after accounting for its errors. Nevertheless, Williams observed that: "Because of a non-compliant price proposal with a questionable low price, and Corporate Experience and Past Performance volumes that were submitted without discerning between the prime and sub-contractors in the joint venture, this proposal could have been eliminated from the competition without a technical evaluation." J.A. 17. Williams again noted that only B&O and Prosperitus Solutions could be awarded a contract without discussions and that B&O's proposal provided the best value to the Government and should be selected.

On August 7, 2018, the Government again awarded the contract to B&O. The Government concluded that "[b]ecause of their superior ratings and the identified strengths, demonstrated relevant past efforts and performance of the prime contractor, and a complete submitted price that is reasonable and realistic, the price premium

over [Safeguard's] total evaluated price is justified for the assurance of superior services when spread over the life of a seven-year contract." J.A. 18 (citation omitted).

On August 20, 2018, Safeguard filed another protest at the GAO. This time, Safeguard argued that the Government had arbitrarily and capriciously evaluated Safeguard's past performance, did not justify the price premium associated with B&O's proposal correctly, and that the Government's actions were biased against Safeguard. This time, Safeguard also contended that it was not required to submit pricing for CLINs X007AA and X007AB. Safeguard asserted that it believed other offerors did not include such pricing and "[t]herefore, it would be arbitrary and capricious for the [Government] to fail to apply the same evaluation criteria and scoring method to the awardee's proposal." J.A. 18 (citation omitted).

On August 24, 2018, Safeguard filed an amended protest at the GAO, asserting that the Government had violated FAR 15.404-1(d)(3) (permitting some cost realism analyses, but forbidding adjustments to a proposal's offered prices) by increasing the price of Safeguard's proposal to account for the missing price information. Safeguard again asserted that the pricing information for CLINs X007AA and X007AB was not required. Safeguard further asserted that the Government engaged in disparate treatment to the extent it revised only Safeguard's proposed price upward.

On August 28, 2018, Caine sent a letter to the GAO stating that the Government had discovered mistakes in the evaluation process and would take corrective action by making a new source selection decision. On August 31, 2018, the GAO dismissed Safeguard's August 20 protest and August 24 amended protest, again as moot.

### iii. Third Source Selection Decision

On September 20, 2018, Williams issued a third Source Selection Decision Document. The Government streamlined its analysis this time. It refused to make price adjustments to reflect the omitted pricing and, instead, concluded that the appropriate cause of action was to disqualify all proposals which were non-compliant on their face. The Government concluded, apparently based on Caine's legal advice, that price adjustments for those CLINs were inconsistent with FAR 15.404-1(d)(3), as Safeguard had contended in its protest. Williams indicated that four offerors were not eligible for award because each of their proposals failed to include the Government-provided amounts for CLINs X007AA and X007AB. On September 20, 2018, the Government sent Safeguard a post-award notice that also functioned as a written debriefing, indicating that B&O was the contract awardee. In that notice, the Government stated that:

> In general terms, [Safeguard's] price proposal was determined non-compliant because the price volume failed to include government provided amounts for the Service Work Request CLINs, which was required by Amendment 00003 [(*sic*)] to the solicitation. The government response to Question Number 9 specifically stated:[ ] A. For bidding purposes please include the following 'not-to-exceed' amounts in the applicable CLIN . . . The solicitation further specifically stated the following 'Exceptions to the line item structure in Section B may result in a bid not considered for award.' Therefore, [Safeguard] is not eligible for award.

J.A. 20.

On September 25, 2018, Safeguard filed another bid protest at the GAO followed by a supplemental protest on October 12, 2018. Safeguard again asserted, *inter alia*,

that it was not required to include pricing for CLINs X007AA and X007AB. On December 14, 2018, the GAO denied Safeguard's protest, determining, *inter alia*, that the Solicitation permitted the Government to reject proposals that omitted the pricing information for CLINs X007AA and X007AB.

### C. Claims Court Proceedings

On January 11, 2019, Safeguard filed a complaint in the Claims Court. On January 17, 2019, the Claims Court granted B&O's motion to intervene. Safeguard alleged that the Government arbitrarily and capriciously disqualified Safeguard's proposal and violated an implied contract to fairly and honestly consider Safeguard's proposal. To support its allegations, Safeguard attached an affidavit from Diana Parks Curran, an attorney for Safeguard and SRM Group, Inc. ("SRM").[5] Safeguard asserted that the Claims Court had jurisdiction under 28 U.S.C. § 1491(b) and under its jurisdiction to consider Safeguard's implied contract claim.

On February 26, 2019, the Government filed the administrative record. On February 28, 2019, the Claims Court issued an order instructing the parties to notify the court of any disagreements regarding the completeness of the administrative record. On March 4, 2019, Safeguard informed the court via email that the parties disputed whether the administrative record was complete. Safeguard recounted that it had asked the Government to allow Safeguard to depose the contracting officer, the source selection authority, and the legal advisor and to supplement the administrative record with the deposition transcripts. Safeguard reported that the Government

---

[5] Under an earlier-awarded contract, SRM had provided the same dorm management services at issue in the Solicitation. SRM owned 49% of Safeguard.

opposed the taking of those depositions. Safeguard stated that it was prepared to participate in a call to discuss the issue or to file a motion if so directed by the court.

Two days later, the Claims Court denied Safeguard's request to take the depositions as insufficiently supported at that time, but it required the Government to investigate whether the administrative record was complete, particularly with respect to documents relevant to the source selection and "documents relevant to the disqualification of other offerors in the procurement for the same or similar reason as a result of which [Safeguard] was eliminated." J.A. 144. The court also required a joint status report regarding the administrative record.

In a March 12, 2019 joint status report, the parties indicated that Safeguard continued to seek supplementation, but this time with an affidavit from Curran and an affidavit from Sadananda Suresh Prabhu, the president of SRM. The Government and B&O opposed supplementation. There was no indication that Safeguard continued to seek depositions of the contracting officials. On the same day, Safeguard moved to supplement with the Curran and Prabhu affidavits, but did not mention the need for depositions.

Curran's affidavit had been attached to the amended complaint and remained unchanged. In Prabhu's affidavit, he indicated that Caine denigrated Prabhu during earlier litigation between SRM and the Government and that Wood had vowed to never work with Prabhu or SRM again. Prabhu also alleged that Wood told him that no one who sued the Government—referencing the prior litigation—had been awarded a later contract.

On March 15, 2019, the Government filed a corrected administrative record with additional documents. On March 22, 2019, after holding a hearing on the issue, the Claims Court denied Safeguard's motion to supplement as not warranted because it found that the affidavits were

not necessary for effective judicial review. On April 2, 2019, Safeguard and the Government filed cross-motions for judgment on the administrative record. On the same date, B&O filed a motion to dismiss, or in the alternative, a cross-motion for judgment on the administrative record.

On July 2, 2019, the Claims Court granted the Government's and B&O's motions for judgment on the administrative record; denied B&O's motion to dismiss; and denied Safeguard's motion for judgment on the administrative record.

The Claims Court reviewed the administrative record under the standards set forth in the APA pursuant to 28 U.S.C. § 1491(b). The court concluded that Safeguard and other offerors were required to include the Government-provided amounts for CLINs X007AA and X007AB in their proposals and that the Government had not arbitrarily and capriciously disqualified Safeguard. The court determined that the Solicitation's statement that "[e]xceptions to the line item structure in Section B may result in a bid not considered for award" provided notice to offerors that they had to include the pricing information because Section B included Schedule B. The court concluded that Safeguard's omissions were material omissions that could not have been clarified without discussions or waived, and that the Government did not abuse its discretion in declining to seek clarifications. The court also determined that the Government had not breached any implied duty of good faith and fair dealing. The court explained that, in each source selection decision, the Government consistently determined that Safeguard's proposal was non-compliant based on its failure to include the pricing information for CLINs X007AA and X007AB and that Safeguard's proposal should have been eliminated without a technical evaluation.

Although Safeguard's two proffered affidavits were not part of the administrative record, the court examined

them and stated that, even if those affidavits had been included, they would not have affected the outcome. The court explained that the affidavits (1) did not concern the ultimate decision-maker, Williams; (2) indicated that Wood was unfavorably disposed towards Safeguard, while the record reflected otherwise since she treated Safeguard fairly and sought to maintain, not disqualify, Safeguard in consideration for the contract award; and (3) otherwise concerned Caine whose role in the evaluation process was limited.

On July 3, 2019, the Claims Court entered final judgment in favor of the Government and B&O. Safeguard timely appealed, and we have jurisdiction under 28 U.S.C. § 1295(a)(3).

## II. DISCUSSION

We begin, as we must, by examining whether the Claims Court had jurisdiction. We then recite the applicable standards of review and turn to the merits, addressing the four issues raised by Safeguard on appeal. Ultimately, we affirm the Claims Court's final judgment.

## A. Jurisdiction

"As an appellate court, we must be satisfied that the court whose opinion is the subject of our review properly exercised jurisdiction, regardless of whether the parties challenge the lower court's jurisdiction." *John R. Sand & Gravel Co. v. United States*, 457 F.3d 1345, 1353 (Fed. Cir. 2006). "[W]e review the Claims Court's findings of fact related to jurisdictional issues for clear error." *Id.* We review de novo the Claims Court's jurisdiction as a question of law. *Id.* at 1354.

Here, Safeguard alleged, *inter alia*, that the Government breached an implied-in-fact contract to fairly and honestly consider Safeguard's proposal for the procurement at issue. The Claims Court conceivably could have had jurisdiction under 28 U.S.C. § 1491(a)(1), which

concerns implied contracts generally, or § 1491(b)(1), which concerns procurement bid protests.[6] This is important because the applicable standard of review differs depending upon the governing jurisdictional predicate.

### 1. Relevant History

As we have noted, "[t]he history of the judicial review of government contracting procurement decisions is both long and complicated." *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1331 (Fed. Cir. 2001).

In 1940, the Supreme Court held that private parties lacked standing to challenge Government contract awards for violation of procurement law because Congress enacted procurement laws to protect the Government, rather than those contracting with the Government. *See Perkins v. Lukens Steel Co.*, 310 U.S. 113, 126 (1940).

But, in 1956, the Claims Court[7] found that disappointed bidders could sue to recover the costs of preparing a bid under an implied contract theory that the Government would "give fair and impartial consideration to [the disappointed bidder's] bid." *Heyer Prods. Co. v. United States*, 140 F. Supp. 409, 413 (Ct. Cl. 1956). At the time,

---

[6]    *Compare* 28 U.S.C. § 1491(a)(1) ("jurisdiction to render judgment upon any claim against the United States founded . . . upon any express or implied contract with the United States") *with* § 1491(b)(1) ("jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of any contract or any alleged violation of statute or regulation in connection with a procurement or proposed procurement").

[7]    For simplicity, we refer to each predecessor court of the Claims Court as the Claims Court.

the Claims Court could only provide monetary relief, typically in the recovery of bid preparation and proposal costs—not injunctive or declaratory relief regarding the procurement itself. *See* David S. Black & Gregory R. Hallmark, *Procedural Approaches to Filling Gaps in the Administrative Record in Bid Protests Before the U.S. Court of Federal Claims*, 43 Pub. Cont. L.J. 213, 219 (2014). *See also* Frederick W. Claybrook, Jr., *The Initial Experience of the Court of Federal Claims in Applying the Administrative Procedure Act in Bid Protest Actions – Learning Lessons All Over Again*, 29 Pub. Cont. L.J. 1 (1999).

The court in *Heyer* did not cite the relevant jurisdictional statute—28 U.S.C. § 1491—but, at the time, the statute contained the same operative language that appears in current § 1491(a)(1)—providing the court with jurisdiction over claims based on an express or implied contract with the United States. *See* Act of Sept. 3, 1954, ch. 1263, § 44(b), 68 Stat. 1226, 1241–42. These implied contract cases have been—and still are—interpreted as limited to implied-in-fact contracts. *See generally* Frederick W. Claybrook, Jr., *Wrong from the Start: Withholding Implied-in-Law Contract Jurisdiction from the Court of Claims*, 46 Pub. Cont. L.J. 1 (2016). At the time of *Heyer*, § 1491 did not mention possible relief and was not divided into any subsections.

In 1970, the United States Court of Appeals for the D.C. Circuit concluded that, because of the intervening passage of the APA, *Perkins* was no longer controlling law and district courts could review procurement decisions of Government agencies by applying the review standards in the APA. *See Scanwell Labs., Inc. v. Shaffer*, 424 F.2d 859 (D.C. Cir. 1970). Several other federal courts of appeal adopted this reasoning. *See, e.g., Impresa*, 238 F.3d at 1331 (citing cases from the First and Sixth Circuits). Under *Scanwell*, disappointed bidders could now challenge contract awards in federal district court for

alleged violations of procurement laws or regulations or for lack of rationality. *Id.*

In 1982, Congress amended 28 U.S.C. § 1491 in the Federal Courts Improvement Act of 1982 ("FCIA"), Pub. L. No. 97–164, § 133(a), 96 Stat. 25, 40. Under the FCIA, § 1491 was split into subsections (a)(1)–(3) and (b). In § 1491(a)(3), the FCIA expressly permitted the Claims Court to grant declaratory, equitable, and extraordinary relief, including injunctive relief on any contract claim brought before the contract was awarded. The operative statutory language authorizing the court's implied contract jurisdiction remained unchanged, but the FCIA placed that language in § 1491(a)(1). New § 1491(b) contained language precluding the court from exercising jurisdiction over certain actions concerning the Tennessee Valley Authority and the Court of International Trade.

In 1983, this court concluded that, after the FCIA, the Claims Court only could consider implied contract claims in the *pre-award* context, but that it now had the authority to provide a broader scope of relief in that context. This Court reasoned that Congress had not broadened the scope of the Claims Court's jurisdiction over implied contract claims in the bid protest context, but had broadened the scope of relief that could be provided. *See generally United States v. John C. Grimberg Co.*, 702 F.2d 1362 (Fed. Cir. 1983) (en banc).

In 1996, Congress enacted the Administrative Dispute Resolution Act of 1996 ("ADRA"), Pub. L. No. 104–320, § 12, 110 Stat. 3870, 3874–76. The ADRA redesignated former § 1491(b) as § 1491(c) and removed former § 1491(a)(3) (providing expanded relief powers).

The ADRA created new § 1491(b), which included (b)(1)–(4). Under § 1491(b)(1), the Claims Court was given jurisdiction to hear bid protests by disappointed bidders, regardless of whether the protest was pre-award or post-award. Under the ADRA, new § 1491(b)(2) per-

mitted "any relief that the court considers proper, including declaratory and injunctive relief except that any monetary relief shall be limited to bid preparation and proposal costs." New § 1491(b)(4) required judicial review pursuant to the APA standards in 5 U.S.C. § 706. Although Congress added § 1491(b)(1) in the ADRA, Congress retained the operative language of § 1491(a)(1), under which the Claims Court previously had jurisdiction to hear claims concerning implied contracts with the Government.

In 2010, this court determined that the Claims Court continued to possess jurisdiction under § 1491(a) over implied contracts outside of the procurement context— e.g., the sale of government property—"where the new statute [§ 1491(b)(1)] does not provide a remedy." *Res. Conservation Grp., LLC v. United States*, 597 F.3d 1238, 1245 (Fed. Cir. 2010).

The court stated:

Before enactment of section 1491(b)(1), the Court of Federal Claims exercised jurisdiction over solicitations for the sale of government property, just as it did in the procurement area. The new statute on its face does not repeal the earlier jurisdiction. The government argues, however, that continuation of the implied-in-fact jurisdiction would be inconsistent with the purposes of the ADRA, which clearly was designed to place all bid protest challenges in a single court (after a sunset period) under a single standard (the APA standard). We agree that Congress intended the 1491(b)(1) jurisdiction to be exclusive where 1491(b)(1) provided a remedy (in procurement cases). The legislative history makes clear that the ADRA was meant to unify bid protest law in one court under one standard. However, it seems quite unlikely that Congress would intend that

statute to deny a pre-existing remedy without providing a remedy under the new statute.

*Id.* at 1245–46 (footnote omitted).

Since the enactment of the ADRA, this court has not addressed whether the Claims Court still has implied-in-fact contract jurisdiction in the procurement context, and if so, whether that jurisdiction falls under § 1491(a) or (b). Different judges at the Claims Court have reached different conclusions. Some Claims Court judges have concluded that such jurisdiction no longer exists. *See Linc Gov't Servs., LLC v. United States*, 96 Fed. Cl. 672, 693 (2010); *Metro. Van & Storage Co. v. United States*, 92 Fed. Cl. 232, 249 n.7 (2010). At least one Claims Court judge has concluded that such jurisdiction exists under § 1491(a). *See L-3 Commc'ns Integrated Sys., L.P. v. United States*, 94 Fed. Cl. 394, 398 (2010). But other Claims Court judges have concluded that such jurisdiction exists under § 1491(b)(1). *See J.C.N. Constr., Inc. v. United States*, 107 Fed. Cl. 503 (2012); *Castle-Rose, Inc. v. United States*, 99 Fed. Cl. 517, 531 (2011); *Bilfinger Berger AG Sede Secondaria Italiana v. United States*, 97 Fed. Cl. 96, 151–52 (2010).

### 2. The Claims Court Had Jurisdiction Here

Addressing the issue for the first time, we conclude that the Claims Court has jurisdiction over implied-in-fact contract claims in the procurement context under § 1491(b)(1), and only § 1491(b)(1).

> Statutory interpretation starts with the plain language of the statute. When interpreting a statute, however, courts must consider not only the bare meaning of each word but also the placement and purpose of the language within the statutory scheme. The meaning of statutory language, plain or not, thus depends on context.

*Barela v. Shinseki*, 584 F.3d 1379, 1382–83 (Fed. Cir. 2009) (citations omitted). "Courts may also rely on legislative history to inform their interpretation of statutes." *N.Y. & Presbyterian Hosp. v. United States*, 881 F.3d 877, 887 (Fed. Cir. 2018). Here, the plain language of 28 U.S.C. § 1491, the statutory context, and the legislative history demonstrate that Congress intended the Claims Court to have jurisdiction over implied-in-fact contract claims in the procurement bid protest context under 28 U.S.C. § 1491(b)(1).

Section 1491(a)(1) appears to provide the Claims Court with jurisdiction over claims against the Government founded upon *any* "implied contract" with the Government. But § 1491(b)(1) specifically provides the Claims Court with jurisdiction over procurement bid protest matters.

The legislative history indicates that Congress did not intend to limit the Claims Court's jurisdiction over any type of procurement bid protest; it, instead, intended to consolidate jurisdiction over all such matters in the Claims Court. The legislative history also indicates that Congress intended for the APA standard of review to apply in all such cases. According to the Conference Report to the ADRA:

This section [(referring to the changes to pre-existing § 1491)] also applies the Administrative Procedure Act standard of review previously applied by the district courts (5 U.S.C. sec. 706) to all procurement protest cases in the Court of Federal Claims. It is the intention of the Managers to give the Court of Federal Claims exclusive jurisdiction over the full range of procurement protest cases previously subject to review in the federal district courts and the Court of Federal Claims. This section is not intended to affect the jurisdic-

tion or standards applied by the Court of Federal Claims in any other area of the law.

H.R. Rep. No. 104–841, at 10 (1996).

As we expressed in *Resource Conservation Group*, it would have been anomalous for Congress to deny a pre-existing remedy without providing a remedy under the new subsection in § 1491(b). But that result is avoided if we construe § 1491(b)(1) to provide the Claims Court with jurisdiction over implied-in-fact contract claims in the procurement context and construe § 1491(a) to govern all other implied-in-fact contract claims. Section 1491(b)(2) explicitly authorizes the Claims Court to grant the relief historically associated with implied contract bid protest claims in the procurement context—"monetary relief limited to bid preparation and proposal costs" while also permitting other forms of relief previously available under former § 1491(a)(3).

For these reasons, we conclude that the Claims Court has jurisdiction over such claims under § 1491(b)(1) and only § 1491(b)(1).

## B. Standards of Review

Given the foregoing, we adopt the traditional standards of review applicable in other bid protest cases brought under § 1491(b)(1) to bid protests cases which also raise implied-in-fact contract claims in the procurement context. We review bid protests under the APA, *see* 28 U.S.C. § 1491(b)(4) (citing 5 U.S.C. § 706), "by which an agency's decision is to be set aside only if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Per Aarsleff A/S v. United States*, 829 F.3d 1303, 1309 (Fed. Cir. 2016) (citation omitted). *See also Impresa*, 238 F.3d at 1332 n.5 (citing § 706(2)(D) "without observance of procedure required by law" as also applicable).

"[P]rocurement decisions are subject to a 'highly deferential rational basis review.'" *PAI Corp. v. United States*, 614 F.3d 1347, 1351 (Fed. Cir. 2010) (citation omitted). "Applying this highly deferential standard, the court must sustain an agency action unless the action does not 'evince[ ] rational reasoning and consideration of relevant factors.'" *Id.* (citation omitted). "We review rulings on motions for judgment on the administrative record de novo." *Id.* "Interpretation of [a bid] solicitation is a question of law' that is reviewed de novo." *Per Aarsleff*, 829 F.3d at 1309 (citation omitted). We review the Claims Court's evidentiary determinations, including determinations to grant or deny a motion to supplement the administrative record, for abuse of discretion. *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1379 (Fed. Cir. 2009).

### C. The Merits: The Claims Court Did Not Err

The Claims Court did not commit any of the four errors alleged by Safeguard on appeal. First, the Claims Court did not err by misinterpreting the Solicitation as requiring offerors to submit the Government-provided amounts for CLINs X007AA and X007AB. Second, the Claims Court did not err by interpreting the Solicitation as providing notice that offerors could be eliminated from consideration for failing to include those amounts. Third, the Claims Court did not err by determining that Safeguard's omissions of the amounts were material and could not have been waived or resolved by clarifications. Fourth and finally, the Claims Court did not err by denying Safeguard's email request and separate motion to supplement the administrative record.

### 1. Submitting the Pricing Information

We apply de novo review to the Claims Court's interpretation of the Solicitation, and we apply the same principles concerning the interpretation of Government contracts to the interpretation of Government solicita-

26       SAFEGUARD BASE OPERATIONS, LLC v. UNITED STATES

tions. *Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1353 & n.4 (Fed. Cir. 2004). A solicitation "is ambiguous only if its language is susceptible to more than one reasonable interpretation." *Id.* at 1353. We must consider the Solicitation as a whole and interpret "it in a manner that harmonizes and gives reasonable meaning to all of its provisions." *Id.* "An interpretation that gives meaning to all parts of the contract [or solicitation] is to be preferred over one that leaves a portion of the contract [or solicitation] useless, inexplicable, void, or superfluous." *NVT Techs., Inc. v. United States*, 370 F.3d 1153, 1159 (Fed. Cir. 2004).

Here, while the solicitation is hardly a model of clarity, there is only one reasonable way to interpret the Solicitation; offerors were required to submit the Government-provided amounts in their proposal totals. This is the only interpretation that harmonizes and gives reasonable meaning to all of the Solicitation's provisions, without rendering any part superfluous or void. The Solicitation instructed offerors "DO NOT SUBMIT PRICING FOR THESE CLINS" while also stating "[f]or bidding purposes please include the following 'not-to-exceed' amounts in the applicable CLIN." J.A. 1322, 2223. The way to understand and harmonize these provisions is to interpret 'pricing' as offeror-provided pricing.

In Schedule B, the Solicitation referenced the "amount listed" and "amount provided" variously as a Government "ceiling," a "'not-to-exceed' amount," and a "lump sum." J.A. 1322–23 (capitalization varies in original). True, there was no such "amount listed" or "amount provided" initially. But, after a potential offeror noted the discrepancy and inquired about it, the Government not only provided the missing amounts, but also emphasized the fact that offerors were required to include those amounts under the relevant CLIN. The Solicitation's continued instruction not to submit 'pricing' makes sense in the context of the express instruction to include the

Government-provided *amounts*, if 'pricing' refers to offeror-provided pricing.

Safeguard's alternative reading—that 'pricing' referred to *all* types of pricing information and that the Government itself would later "please include" the amounts in an awarded contract—is not a reasonable one. It neither harmonizes nor provides reasonable meaning to all provisions. It effectively renders the "please include" instruction useless and inexplicable. Safeguard never explains why the Solicitation would instruct *offerors* to "DO NOT SUBMIT PRICING," but instruct the *Government* to "please include" the amounts it provided in response to Question 9. It makes little sense for the Government to answer a potential offeror's question by responding to itself—i.e., the Government—with a 'note to self.'

Safeguard complains that limiting 'pricing' to offeror-provided pricing impermissibly inserts additional language into the Solicitation and changes its plain meaning. But Safeguard incorrectly assumes that *its* particular interpretation of 'pricing' is correct, without explaining why it is reasonable given the context. At least one other potential bidder clearly understood the difference between 'pricing' and Government-provided amounts when it noted the absence of the Government-provided amounts from the Solicitation. Once the Government corrected the fact that the amount quantities had been overlooked, any confusion was removed.[8]

---

[8]    Safeguard argues that, to the extent the "DO NOT SUBMIT PRICING" provisions and the provision requiring certain Government-provided amounts to be included were contradictory, we must rely on the Solicitation's Order of Precedence Clause. Because we find no such contradiction, we reject this argument.

28          SAFEGUARD BASE OPERATIONS, LLC v. UNITED STATES

2. Notice of Possible Elimination

The Claims Court also did not err in determining that the Solicitation provided notice that an offeror's proposal could be eliminated from consideration for failing to include the pricing for CLINs X007AA and X007AB by the statement in Section A that "[e]xceptions to line item structure in Section B may result in a bid not considered for award," because Section B necessarily included Schedule B. We must consider the Solicitation as a whole and interpret "it in a manner that harmonizes and gives reasonable meaning to all of its provisions." *Banknote,* 365 F.3d at 1353. The only reasonable interpretation is that the Solicitation provided adequate notice because Section B included Schedule B.

In 'Section A Solicitation General Information,' the Solicitation stated:

> Pricing Schedule and Periods of Performance (POP) Service dates for each CLIN are detailed in Section B. *Note: Exceptions to line item structure in Section B may result in a bid not considered for award.*

J.A. 1350 (emphasis added).

Although Section A referred to the pricing schedule and periods of performance service dates for each CLIN as being detailed in "Section B" and the line item structure as appearing in "Section B," none of these details appeared in the Solicitation in the portion labeled 'Section B Price Schedule.' That portion of the Solicitation was later amended to reference one CLIN, but still did not detail any price schedule and periods of performance service dates for "each CLIN" or contain any "line item structure." Instead, that portion of the Solicitation contained only general information about *Schedule B*—the actual price schedule organized by CLIN. This makes sense in light of the other label for that portion—'Section B Price

Schedule General Information' as shown on page 31 of the Solicitation.

The rest of the Solicitation similarly referred to Section B as containing details found only in Schedule B. For example, Question 6 of Amendment No. 0003 referred to the "Section B Price Schedule" in terms of Government forms SF 1449 and Optional Form 336—but these forms were only used for Schedule B. Question 6 also referenced CLINs from Schedule B. Similarly, Questions 7 and 8 referenced "Section B Price Schedule: Schedule B" and specific CLINs from Schedule B. Questions 11–16 also referenced the "Section B Price Schedule" while referring to specific CLINs from Schedule B.

Reading the Solicitation as a whole, the interpretation that harmonizes and gives meaning to all of these provisions is one in which Schedule B is part of Section B, as the Claims Court concluded. Safeguard offers no compelling alternative interpretation or explanation.

Notably, the Solicitation stated that any noncompliance "may cause [an offeror's] proposal to be determined unacceptable or be deemed non-responsive and excluded from consideration." J.A. 1507 (quoting Addendum to FAR 52.212-1(b)(1)). Safeguard and other offerors were clearly on notice that exceptions to the line item structure of Schedule B could result in elimination. Safeguard's multiple failures to submit the pricing information for the sixteen CLINs X007AA and X007AB were such exceptions.

### 3. Clarifications and Waiver

The Claims Court similarly did not err by determining that Safeguard's omissions of the pricing information for CLINs X007AA and X007AB were material, not re-

solvable by clarifications, nor subject to waiver.[9]  Regardless of whether the omissions were capable of clarification or waiver, moreover, the Government had discretion to seek clarifications or apply waiver and did not abuse its discretion by declining both options.

### i. Clarifications

Under FAR 15.306(a)(1), (2), clarifications are "limited exchanges" in which the Government is permitted—but not required—to allow offerors to "clarify certain aspects of proposals (e.g., the relevance of an offeror's past performance information and adverse past performance information to which the offeror has not previously had an opportunity to respond) or to resolve minor clerical errors."  "Clarifications are not to be used to cure proposal deficiencies or material omissions, materially alter the technical or cost elements of the proposal, or otherwise revise the proposal." *Dell Fed. Sys., L.P. v. United States*, 906 F.3d 982, 998 (Fed. Cir. 2018) (citation omitted).  *Cf. Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1323 (Fed. Cir. 2003) ("There is no requirement in the regulation that a clarification not be essential for evaluation of the proposal.").

Here, Safeguard's omissions were incapable of clarification because they were proposal deficiencies and material omissions that, if clarified, would have materially altered the cost elements of the proposal and revised the proposal.  They were not minor clerical errors.

---

[9]    It is ironic that Safeguard even makes these arguments after having protested the contracting officials' efforts to add the missing amounts into Safeguard's price proposal.  It effectively contends here that the contracting officials should have done via clarification or waiver what it argued FAR 15.404-1(d)(3) prohibits.

This is evident from the many provisions in the Solicitation that emphasized the necessity of including the amounts for pricing purposes. The omissions constituted "[e]xceptions to [the] line item structure in Section B" and therefore "may result in a bid not considered for award." J.A. 1350. The amounts were necessarily required in a completed "Section B price and price breakdown." J.A. 1508. Similarly, the price proposal had to be "complete"— i.e., "compliance with the Price Volume instructions in the solicitation." J.A. 4829. Those instructions required a "completed Schedule B." J.A. 4823.

More directly, the importance of the amounts were emphasized in the Government's response to Question 9 ("please include" the pricing information); in FAR 52.212-1 ("[a]s a minimum, offers must show . . . Price and any discount terms" and "[o]fferors shall provide a detailed breakdown of how it arrived at proposed cost as follows: Contract Line Item Number"); and in the Addendum to FAR 52.212-1 (the "[p]rice proposal shall include price for the phase-in period, base period and seven option periods."). Proposals would be evaluated by adding the total price for all option periods to the total price for the basic requirement. FAR 52.212-1(g) required the offeror to include its "best terms from a price and technical standpoint." The Government evaluated the proposals based on price as an important factor—roughly equal to all other factors combined.

Safeguard's failure to include the pricing information meant that its total price was not only inaccurate, but inaccurate in a significant way. It was $6,121,228 lower than it should have been. This was not an inconsequential or negligible amount. More than the inaccurate price itself, Safeguard's omissions prevented the Government from properly evaluating Safeguard's proposal. As Williams noted, Safeguard needed "a completely revised price proposal accounting for all costs." J.A. 15. The omissions were significant enough that they resulted in the elimina-

tion of all four proposals that contained them. They were far from immaterial.

### ii. Waiver

Safeguard's omissions were not waivable for the same reasons. Under FAR 52.212-1(g), the Government may waive "informalities and minor irregularities." While this court has not examined that FAR provision in a precedential opinion, in a non-precedential opinion, we emphasized that waiver under FAR 52.212-1(g) is discretionary. *See Strategic Bus. Sols., Inc. v. United States*, 711 F. App'x 651 (Fed. Cir. 2018) (declining to find that the Government was required to waive a protestor's failures to redact necessary information). We agree.

FAR 14.405 provides examples of what might constitute a minor informality or irregularity.[10] Safeguard's omissions are materially different from those examples. For instance, FAR 14.405 provides that:

> A minor informality or irregularity is one that is merely a matter of form and not of substance. It also pertains to some immaterial defect in a bid or variation of a bid from the exact requirements of the invitation that can be corrected or waived without being prejudicial to other bidders. The defect or variation is immaterial when the effect on price, quantity, quality, or delivery is negligible when contrasted with the total cost or scope of the supplies or services being acquired. . . . Examples of minor informalities or irregularities include failure of a bidder to—

---

[10] "When determining the plain meaning of a regulation a court may look to the language of related regulations." *JBLU, Inc. v. United States*, 813 F.3d 1377, 1382 (Fed. Cir. 2016); *see also Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1038 (Fed. Cir. 2009).

(a) Return the number of copies of signed bids required by the invitation;

(b) Furnish required information concerning the number of its employees;

(c) Sign its bid, . . .

(d) Acknowledge receipt of an amendment to an invitation for bids, . . . ; and

(e) Execute the representations with respect to Equal Opportunity and Affirmative Action Programs . . . .

Safeguard's omissions were unlike these minor failings. They were omissions of substance, not form. They concerned material defects and variations from the exact requirements that would have been prejudicial to other bidders unless the same omissions were waived for them as well. The roughly $6 million increase in price was not negligible when contrasted with the total cost or scope of the services being acquired.

### iii. Discretion to Waive or Seek Clarifications

Even if the omissions were waivable or subject to clarification, the Government did not abuse its discretion by declining to waive or clarify them. This court may affirm on any basis supported by the record. *See Music Square Church v. United States*, 218 F.3d 1367, 1373 (Fed. Cir. 2000). FAR 15.306 and 52.212-1(g) each provide that the Government "may" waive or clarify. The "word 'may' clearly connotes discretion," though "discretion is not whim." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1931 (2016) (cleaned up).

Given this record, we cannot find that the Government abused its discretion in declining to waive or clarify the omissions. The Solicitation stated that the Government intended to award a contract without establishing a competitive range or engaging in discussions. The Solici-

tation required complete pricing information in general, including a completed Schedule B. Such complete pricing information was crucial to the Government's evaluation of the proposals and its intent to award a contract without discussions. As source selection authority Williams noted, remedying the omissions would have required a completely revised price proposal. We cannot find that the Government abused its discretion in declining to seek clarifications or applying waiver.

### 4. Supplementing the Administrative Record

Finally, the Claims Court did not abuse its discretion by denying Safeguard's email request and separate motion to supplement the administrative record.

"[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973). "The task of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based on the record the agency presents to the reviewing court." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985). "The purpose of limiting review to the record actually before the agency is to guard against courts using new evidence to 'convert the "arbitrary and capricious" standard into effectively de novo review.'" *Axiom*, 564 F.3d at 1380 (citation omitted). Supplementation "should be limited to cases in which 'the omission of extra-record evidence precludes effective judicial review.'" *Id.* (citation omitted). "Judicial review is 'effective' if it is consistent with the APA." *AgustaWestland N. Am., Inc. v. United States*, 880 F.3d 1326, 1331 (Fed. Cir. 2018). *See also CHE Consulting, Inc. v. United States*, 552 F.3d 1351, 1356 (Fed. Cir. 2008) (declining to address whether supplementation was proper, because "[w]ithout supplementation, the record in this case provides a rational basis for [the Government's] decision").

Here, the Claims Court found that the information in the proffered affidavits was not necessary for effective judicial review.  Not only did the court point to the unfixable patent defects in Safeguard's proposal, but it found the statements in the affidavits either inaccurate or irrelevant.

"Evidentiary determinations by the [Claims Court], including motions to supplement the administrative record, are reviewed for abuse of discretion." *Axiom*, 564 F.3d at 1378.  "An abuse of discretion is found when: (1) the court's decision is clearly unreasonable, arbitrary or fanciful; (2) the decision is based on an erroneous construction of the law; (3) the Claims Court's factual findings are clearly erroneous; or (4) the record contains no evidence upon which the district court rationally could have based its decision." *Air Land Forwarders, Inc. v. United States*, 172 F.3d 1338, 1341 (Fed. Cir. 1999).  We find no abuse of discretion in those conclusions.

Far from abusing its discretion, the Claims Court took pains to ensure effective judicial review.  In denying Safeguard's email request to supplement with transcripts of proposed depositions, the court required that the Government investigate whether the administrative record was complete, particularly regarding documents relevant to the source selection and "documents relevant to the disqualification of other offerors in the procurement for the same or similar reason as a result of which [Safeguard] was eliminated." J.A. 144.  The court also denied Safeguard's email supplementation request only 'at that time.'  Safeguard never renewed its request for depositions and, instead, sought to supplement the record with affidavits from Curran and Prabhu, which the court examined and considered.

The allegations in the affidavits were not borne out by the record.  Prabhu alleged that Wood was predisposed against Prabhu and SRM, but the record reflected that

Wood not only treated Safeguard fairly, but favorably during the evaluation process. Prabhu also alleged that Caine was predisposed against Prabhu and SRM, but, even if true, Caine had almost no role in the procurement. Similarly, while Curran alleged that Caine was predisposed against Prabhu, SRM, and Safeguard, there was no reason to believe that, even if true, that fact impacted Williams's conclusions, which were consistent across all three evaluations, even those occurring prior to any advice from Caine.

We agree with the Claims Court that the administrative record provided more than sufficient grounds to conclude that the Government's decision was proper under the applicable standards and that supplementation was unnecessary for effective judicial review.

### III. CONCLUSION

We have considered the parties' remaining arguments and do not find them persuasive or necessary to address. For the foregoing reasons, we affirm the final judgment of the Claims Court.

**AFFIRMED**

# United States Court of Appeals for the Federal Circuit

---

**SAFEGUARD BASE OPERATIONS, LLC,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES, B&O JOINT VENTURE, LLC,**
*Defendants-Appellees*

---

2019-2261

---

Appeal from the United States Court of Federal Claims in No. 1:19-cv-00061-MBH, Senior Judge Marian Blank Horn.

---

NEWMAN, *Circuit Judge*, dissenting.

This bid protest by Safeguard Base Operations, LLC ("Safeguard") relates to a small business set-aside contract for dormitory maintenance services at the Federal Law Enforcement Training Center ("FLETC") of the Department of Homeland Security ("DHS" or "Agency"). Safeguard's related company SRM Group, Inc. was the incumbent contractor.

On the bidding for the successor six-year contract, the Agency disqualified Safeguard because of a purported error in its bid. Four of the seven offerors, including Safeguard, made the same "error": they followed a bidding instruction in the Solicitation document instead of the instruction in a

later question-and-answer ("Q&A") document. The Agency disqualified the offerors who followed the instruction in the Solicitation. Safeguard states that the terms of the Solicitation were not properly amended as required by the Federal Acquisition Regulation ("FAR"), and that it was unfairly disqualified.

The Court of Federal Claims held that the Agency's disqualification of Safeguard, without consideration of the merits of its bid, was reasonable;[1] my colleagues on this appeal agree. I respectfully dissent.

DISCUSSION

The so-called erroneous bid concerns a provision in the "Price" section of the Solicitation. This section requires detailed pricing information, including, for example, labor rates for all positions, overtime hours and rates, exempt and non-exempt fringe benefits, health and welfare, pensions, general and administrative costs, profits, direct costs, bonding costs, etc. However, for contract line item numbers X007AA and X007AB the Solicitation states, in capital letters set off by asterisks:

 *****DO NOT SUBMIT PRICING FOR THESE CLINS*****

J.A. 4251. Safeguard complied with the instruction and did not submit pricing for the designated line items, which were for certain fixed-price not-to-exceed "plug number" items that were not subject to variation in bid. The Solicitation provided no dollar amounts for these CLINS. However, in a Q&A document responding to 272 questions, issued four months after the issuance of the Solicitation as Amendment No. 3, Q&A 9 was as follows:

> 9. Q: Section B Price Schedule: Schedule B – CLIN X007AA & X007AB**:** These CLINs state "The

---

[1]    *Safeguard Base Operations LLC v. United States*, 144 Fed. Cl. 304 (2019) ("Fed. Cl. Op.").

> amount listed is the Government 'Ceiling' and is a 'not-to-exceed' amount", however there are no amounts listed.   What are the not-to-exceed amounts for these CLINs?
>
> A:  For bidding purposes please include the following 'not-to-exceed' amounts in the applicable CLIN: [giving dollar amounts for each line item, total $6,121,228].

J.A. 4297.   The government does not dispute that the "please include" in Q&A 9 is contrary to the "DO NOT SUBMIT" instruction in the Solicitation.

Safeguard (and three other bidders) did not submit pricing for the "DO NOT SUBMIT" line items.  The briefs state that the Contracting Officer spotted this discrepancy among the bidders.  From the briefs, it is not clear why adjustment did not occur.  But it is clear that the Agency "disqualified" Safeguard as a bidder because of the perceived discrepancy.  And the Agency's promised remedial action, after Safeguard complained to the General Accountability Office, did not occur.

On appeal to the Court of Federal Claims, Safeguard pointed to several Agency errors.  First, Safeguard stated that the Agency did not follow the FAR procedures for changing the terms of the Solicitation, pointing out that the Q&A request to include the previously omitted line item amounts required some formality to change the pricing terms of the Solicitation.  Safeguard argued that the Q&A document contained apparently inconsistent instructions, and that the FAR requires that a substantive change is either processed by FAR 15.306 (clarification), or resolicited. *See Dell Fed. Sys., L.P. v. United States*, 906 F.3d 982, 998 (Fed. Cir. 2018) ("Clarifications are not to be used to cure proposal deficiencies or material omissions, materially alter the technical or cost elements of the proposal, or otherwise revise the proposal." (quoting *JWK Int'l Corp. v. United States*, 52 Fed. Cl. 650, 661 (2002))).

4          SAFEGUARD BASE OPERATIONS, LLC v. UNITED STATES

The Court of Federal Claims held that Safeguard's failure to include the CLIN "plug numbers" was a material omission from Safeguard's bid. Fed. Cl. Op. at 346. However, no formal change in the Solicitation's price instruction was ever made.

Second, Safeguard cited the Order of Precedence for resolution of inconsistencies, for the Order of Precedence was a clause of this Solicitation:

> (s) *Order of precedence.* Any inconsistencies in this solicitation or contract shall be resolved by giving precedence in the following order: (1) the schedule of supplies/services; (2) the Assignments, Disputes, Payments, Invoice, Other Compliances, Compliance with Laws Unique to Government Contracts, and Unauthorized Obligations paragraphs of this clause; (3) the clause at 52.212-5; (4) addenda to this solicitation or contract, including any license agreements for computer software; (5) solicitation provisions if this is a solicitation; (6) other paragraphs of this clause; (7) the Standard Form 1449; (8) other documents, exhibits, and attachments; and (9) the specification.

J.A. 1359. Safeguard argues that the Schedule of Supplies/Services directing offerors not to submit pricing on the CLINS in question has precedence over any addenda to the solicitation. *See Magnus Pac. Corp. v. United States*, 133 Fed. Cl. 640, 681 (2017) ("If there are direct conflicts between information contained in different parts of a solicitation, the court may rely on the contract's 'order of precedence' clauses to discern the reasonable interpretation of the contract.").

Third, Safeguard states that its summary disqualification is illuminated by the Agency's known bias against Safeguard. The Court of Federal Claims denied Safeguard's request to depose Agency officials. Safeguard

submitted two affidavits on this aspect, but the court refused to enter these affidavits into the administrative record.

In the proffered affidavit of Safeguard's President, Suresh Prabhu, he averred that "Ms. Wood [the Contracting Officer] called me wanting to know why SRM had chosen to file another REA. She stated that I had 'humiliated' her by filing the Amended REA [Request for Equitable Adjustment] and vowed never to work with me or SRM in the future. I asked if that meant that DHS would not renew SRM's Contract, and her response was, 'Nobody who has ever sued the Government has been awarded a Contract.'" J.A. 1301.

The affidavit of Safeguard's local counsel, Diana Parks Curran, averred that DHS lawyer James Caine "stated that 'it is not a secret that there is bad blood between FLETC and [SRM's President] Suresh [Prabhu]' and that if he could avoid ever awarding another contract to Suresh, he would ensure Suresh never works at FLETC ever again." J.A. 1226, ¶ 6 (alterations in original).[2]

The Court of Federal Claims held that it was unnecessary to consider the charge of bias, because "[i]n sum, the administrative record does not indicate that the Agency breached its duty to fairly and honestly consider proposals, even if the court were to consider the [affidavits] . . . , both of which affidavits were not permitted by the court to be

---

[2]    Safeguard states that there were several disputes during the prior contract term, primarily concerning change orders. However, the record shows no criticism of the Safeguard company's past performance, and Safeguard reports receipt of a "DHS Small Business Achievement Award for its outstanding work in support of the DHS mission" in April 2018. Safeguard Br. at 5; J.A. 158, ¶ 16.

6          SAFEGUARD BASE OPERATIONS, LLC v. UNITED STATES

included in the administrative record as not necessary for effective judicial review." Fed. Cl. Op. at 353.

On appeal to the Federal Circuit, Safeguard stresses the flawed Agency procedures, and the impropriety of Safeguard's summary disqualification without permitting remedy of the perceived error due to inconsistent instructions concerning the designated line items.

The panel majority finds that there is no inconsistency between the Solicitation and Q&A 9. The majority also finds that the Q&A 9 instruction to "please include" pricing is an "explanation" of the "DO NOT SUBMIT PRICING" command in the Solicitation. The majority further finds: "The way to understand and harmonize these provisions is to interpret 'pricing' as offeror-provided pricing." Maj. Op. at 26. The majority reasons that the bidder is required to "provide a detailed breakdown of how it arrived at proposed cost," Maj. Op. at 31, although for these line items there can be no such breakdown, for these line item "plug numbers" are provided by the Agency. The majority also explains its ruling by stressing "the importance of the amounts," Maj. Op. at 31, ignoring that the amounts at issue are not subject to competitive bidding.

The government does not offer such strained theories. The government agrees that the Q&A No. 9 instruction is a change from the Solicitation, and states that it superseded the Solicitation. Accepting that this was the Agency's intention, the flaw is in the uncertainty and absence of clarification as the FAR requires, accompanied by the summary disqualification of four bidders.

Of course the terms of a solicitation can be changed, and the FAR provides procedures for doing so. Here no such procedures were followed. *See Dubinsky v. United States*, 43 Fed. Cl. 243, 267 n.56 (1999) ("[The FAR] does not grant contracting officers carte blanche to notify offerors of one rating system in the RFP [Request for

Proposals] and then to apply a different system during the evaluation of proposals.").

"When the evaluation of proposals materially deviates from the evaluation scheme described in the solicitation, the agency's failure to follow the described plan may constitute evidence of arbitrary and capricious decision-making." *L-3 Commc'ns EOTech, Inc. v. United States*, 83 Fed. Cl. 643, 654 (2008). Yet my colleagues hold that because Safeguard followed the Solicitation instruction instead of the Q&A 9 instruction, Safeguard was properly disqualified. Precedent is contrary. *See Hunt Bldg. Co. v. United States*, 61 Fed. Cl. 243, 273 (2004) ("The agency's failure to follow its own selection process embodied in the Solicitation is . . . a prejudicial violation of a procurement procedure established for the benefit of offerors.").

It is noteworthy that four of the seven bidders made the same purported "error." *See LaBarge Prods., Inc. v. West*, 46 F.3d 1547, 1555 (Fed. Cir. 1995) ("[T]he bastion of federal procurement policy [is] that all offerors must possess equal knowledge of the same information in order to have a valid procurement." (quoting *Logicon, Inc. v. United States*, 22 Cl. Ct. 776, 788 (1991))).

My colleagues dispose of the question of bias by holding that the government did not breach an "implied-in-fact contract to fairly and honestly consider an offeror's proposal in the procurement context."[3] Maj. Op. at 3. The covenant to

---

[3]    The panel majority bases jurisdiction on "an implied-in-fact contract claim," reciting "an implied-in-fact contract to fairly and honestly consider an offeror's proposal in the procurement context." Maj. Op. at 2–3. Without doubt, the Court of Federal Claims has jurisdiction of this bid protest appeal. However, I do not agree that jurisdiction is a matter of an implied-in-fact contract to deal fairly and honestly with offerors. The government's

8    SAFEGUARD BASE OPERATIONS, LLC v. UNITED STATES

fairly and honestly implement the bidding process under-lies the vast framework of government procurement.  Here, however, the government disposes of the charge of bias by stating that Safeguard was engaged in a "fishing expedi-tion" and that consideration of the charge of bias "was not necessary for effective judicial review of whether the Agency fairly and honestly considered Safeguard's pro-posal."  Gov't Br. 43, 47.

This casual disposition of responsible allegations dis-serves the federal-private partnership that serves the na-tion's complex needs.  *See Pitney Bowes Gov't Sols., Inc. v. United States*, 93 Fed. Cl. 327, 332 (2010) ("Where bias is alleged, the administrative record frequently will not be complete or suffice to prove or disprove the allegation.  Con-sequently, to address bias, the court will entertain extra-record evidence and permit discovery . . . ."); *Int'l Res. Re-covery, Inc. v. United States*, 61 Fed. Cl. 38, 42 (2004) ("This Court and other fora resolving bid protests have tradition-ally considered extra-record evidence in assessing alleged bias or bad faith."); *Inforeliance Corp. v. United States*, 118 Fed. Cl. 744, 747 (2014) ("An allegation of bad faith or bias in particular calls for extra-record evidence to support re-quests for supplementation or discovery.").

The Court of Federal Claims erred in its refusal to re-solve the allegation of bias, and my colleagues err in ration-alizing the Agency's departures from the rules and policy

---

obligation to deal fairly and honestly with offerors is a cov-enant that underlies all government procurement.  It is the foundation on which the private sector provides goods and services for government needs.  The obligation to deal fairly and honestly with offerors is not subject to negotiation, mu-tuality of understanding, and consideration—the require-ments of an implied-in-fact contract.  Thus I do not share the majority's theory of jurisdiction.

of federal procurement.  I respectfully dissent from the denial of this bid protest.